*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

*In re* WELDON, Minors.

UNPUBLISHED
February 1, 2022

No. 357700
Macomb Circuit Court
Family Division
LC Nos. 2020-000041-NA
2020-000042-NA
2020-000043-NA

Before: GADOLA, P.J., and MARKEY and MURRAY, JJ.

PER CURIAM.

Respondent appeals as of right the order of the trial court terminating his parental rights to his minor children DEW, ARW, and ALW, under MCL 712A.19b(3)(c)(*i*) (conditions that led to adjudication continue to exist), (g) (failure to provide proper care and custody), and (j) (reasonable likelihood of harm if returned to the home). We affirm.

## I. BACKGROUND[1]

On January 30, 2020, the trial court issued an ex parte order that placed respondent's minor children, DEW, ARW, and ALW, in protective custody with Michigan's Department of Health and Human Services (DHHS) for care and supervision. The trial court found that the children's mother allowed and directed others to physically discipline DEW and ARW, despite her agreeing to a safety plan after similar incidents. At the time, respondent was incarcerated on charges of criminal sexual conduct and child abuse that did not involve DEW, ARW, or ALW.[2] Because of this, the trial court concluded respondent could not provide for his children. On January 31, the

---

[1] The parental rights of the minor children's mother were addressed during the trial court proceedings, but are not subject to this appeal.

[2] The criminal charges against respondent involved the nieces of respondent's estranged wife, who is the mother of the minor children.

trial court authorized the removal petition filed by DHHS, exercised jurisdiction over DEW, ARW, and ALW, and placed them with their paternal grandmother, Cynthia Clave.

While incarcerated, respondent entered a no-contest plea to the trial court's exercise of jurisdiction over his children, and a parent-agency agreement was adopted. The parent-agency agreement required random drug screens, a psychological evaluation, parenting classes, individual therapy, an ADA assessment, appropriate housing, legal sources of income, and a lawful lifestyle. At some point following the plea hearing, respondent was released from jail pending trial. Respondent lived with his paternal uncle and participated in services set forth in the parent-agency agreement. As a condition of his bond for the criminal sexual conduct and child abuse charges, respondent was not permitted contact with anyone under 17 years old, including his own children.

On May 27, 2021, DHHS filed a supplemental petition seeking termination of respondent's parental rights to DEW, ARW, and ALW.[3] The petition alleged that respondent stopped screening for illegal substances, his parenting time was suspended due to his pending criminal case, he was unable to maintain a lawful lifestyle throughout the duration of this case, and that he failed to complete all of the goals of his parent-agency agreement and did not demonstrate a benefit from services provided to him. The trial court referee conducted a trial on the supplemental petition where it heard testimony from Leslie Thomas, respondent, and Clave.

Thomas, a foster care worker for DHHS, testified that respondent completed a psychological evaluation, which resulted in the recommendation that he be subject to random drug screens, a drug assessment, therapy for anger management and depression, and supervised visitation with his children, if permitted by DHHS. According to Thomas, respondent benefited from therapy. However, Thomas testified that respondent failed to provide drug screens after September 17, 2020, did not provide income documentation for his job as an independent contractor, and did not complete a housing assessment. Thomas also reiterated that respondent's parenting time was suspended because of his pending criminal case and, therefore, he could not demonstrate a benefit from his parenting class.

Relatedly, Thomas and respondent each testified that he would plead no contest to one count of second-degree child abuse, that two counts of child abuse and one count of criminal sexual conduct would be dismissed, and that he would be sentenced to probation. In addition, respondent testified about his past criminal convictions, admitted to not drug screening after September 2020, and discussed his relationship with the minor children's mother. Respondent further admitted that his uncle's house was not suitable for his children, and discussed his hospitalizations for frostbite.

---

[3] DHHS filed two previous petitions that sought termination of respondent's parental rights, but neither were accepted by the trial court referee. DHHS first petitioned for termination on October 13, 2020. In response, the referee stated that respondent had yet to meaningfully participate in all services since the disposition date of March 5, 2020, "right when COVID started[.]" The referee denied the second petition for termination on January 5, 2021, because of the delay in starting services due to the COVID-19 pandemic and because the children were safe in the care of a relative and progress had been made on the parent-agency agreement.

Respondent and Clave both testified about the conditions under which respondent would move into her home, which was dependent on the trial court's decision regarding his parental rights. Clave, as caretaker of respondent's children, testified that she would respect any decision by the trial court, vowing to keep the children safe and not put them in harm's way in order to benefit respondent. Additionally, Clave stated that she would respect and follow adoption laws, and any subsequent decision by the trial court regarding respondent's visitation rights.

In a June 15, 2021 opinion entered on the record, the trial court referee recommended termination of respondent's parental rights to DEW, ARW, and ALW under MCL 712A.19b(3)(c)(*i*), (g), and (j). The trial court judge approved the recommendation in an order dated June 17, 2021. Respondent appeals from that order.

## II. ANALYSIS

On appeal, respondent does not challenge the trial court's conclusion that DHHS established statutory grounds for termination of his parental rights.[4] Respondent instead contends that termination of his parental rights was not in the best interests of DEW, ARW, and ALW. Specifically, respondent argues that the trial court clearly erred because it did not consider his parenting ability, the children's bond with him, the permanency and stability created if he were to move into Clave's home with his children, or alternatives to termination of his parental rights.

"If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child[ren]'s best interests, the court shall order termination of parental rights and order that additional efforts for reunification of the child[ren] with the parent not be made." MCL 712A.19b(5). This Court reviews trial court decisions regarding children's best interests for clear error. *In re Medina*, 317 Mich App 219, 226; 894 NW2d 653 (2016). "A finding is 'clearly erroneous' if, although there is evidence to support it, we are left with a definite and firm conviction that a mistake has been made." *In re HRC*, 286 Mich App 444, 459; 781 NW2d 105 (2009).

A trial court must conclude by a preponderance of the evidence that termination of an individual's parental rights is in the children's best interests. *In re Jones*, 316 Mich App 110, 119; 894 NW2d 54 (2016). When reviewing the trial court's best interests conclusion, our Court "focus[es] on the child[ren] rather than the parent." *In re Schadler*, 315 Mich App 406, 411; 890 NW2d 676 (2016). "The trial court should weigh all the evidence available to determine the children's best interests." *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014). "[T]he court may consider the child[ren]'s bond to the parent, the parent's parenting ability, the child[ren]'s need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re Olive/Metts*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012) (citations omitted). In addition, the trial court can consider the probability of the children being returned to the parent's home within the foreseeable future. *In re Kaczkowski*, 325 Mich App 69, 78; 924

---

[4] Accordingly, the trial court referee's analysis of the statutory grounds for termination as to respondent's parental rights stands. See *Denhof v Challa*, 311 Mich App 499, 521; 876 NW2d 266 (2015) (stating that this Court will not grant relief when the appealing party fails to challenge the basis of a trial court's ruling).

NW2d 1 (2018). The trial court may also "consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child[ren], the children's well-being while in care, and the possibility of adoption." *In re White*, 303 Mich App at 714. The trial court must explicitly consider the children's placement with a relative as a factor in determining whether termination of parental rights is in the children's best interests. *In re Olive/Metts*, 297 Mich App at 43.

In this case, the trial court record shows that the referee conducted a thorough analysis of whether termination of respondent's parental rights was in the best interests of DEW, ARW, and ALW. For instance, the referee addressed the children's bond with respondent, their need for permanency and stability, and their placement with a relative. Specifically, the referee noted respondent's failure to comply with his parent-agency agreement, and indicated that his criminal background posed a threat to his children. In addition, the referee heard testimony from Thomas that respondent successfully completed a required parenting class, but could not demonstrate a benefit from that service because his parenting time was suspended as a result of his pending criminal matter.

Similarly, the referee considered respondent's bond with his children, acknowledging that DEW missed his father. Additionally, the referee heard Clave's testimony that shared the children's desire to see respondent while he was incarcerated. However, the record also states that ALW was born during respondent's incarceration and has never met respondent. As a result, ALW does not have a bond with respondent. The referee added that "[t]he Court does believe that [respondent] loves the children; however, his actions have caused harm to them and has led to his incarceration, which has deteriorated the parent-child bond."

Moreover, contrary to the evidence, respondent confusingly argues to this Court that the children's need for permanency and stability would be satisfied if respondent moved into Clave's home with his children. If anything, such a move would cause instability to the children's lives based on respondent's history. For example, respondent failed to screen for drugs after September 2020, a condition of his parent-agency agreement, and never provided verification of his income. Respondent also has a lengthy history of criminal conduct, and a recent no-contest plea to second-degree child abuse involving a minor living in his home at the time.

The referee noted that respondent's children were well cared for in Clave's care throughout the protective proceedings and that she was willing to adopt them. The referee explicitly stated that this factor weighed against termination. But the referee "believe[d] that the children's need for safety outweigh[ed] the fact that they [were] placed with a relative."

Lastly, respondent suggests, as alternatives to termination, a guardianship or awarding custody of the children to respondent. The referee addressed guardianship as follows:

> The Court cannot ignore the fact that paternal grandmother prefers adoption over guardianship. Guardianship would allow natural mother to visit the child; however, adoption would not. By adopting the children, she could discontinue visits with natural mother and allow father to move back into the home, which makes the motivation questionable.

The referee expressed great concern about the children's safety and continued placement with Clave because of the plan to allow respondent to move into her home. The referee emphasized the risk of removal of the children from Clave's home if she fails to protect them from abuse. Ultimately, the referee ruled in favor of termination over guardianship because the children are safe and comfortable in Clave's home, and are bonded, but advised DHHS to extensively discuss the expectations and consequences of adoption with Clave.

In regards to respondent's alternative argument on appeal proposing a change in custody instead of termination, respondent identifies no evidence or citation in the trial court record that this alternative was presented to the referee or at any point during the children's protective proceedings. "A party may not merely announce a position and leave it to this Court to discover and rationalize the basis for the claim." *National Waterworks, Inc v Int'l Fidelity & Surety, Ltd*, 275 Mich App 256, 265; 739 NW2d 121 (2007). Moreover, the core issue of this appeal involves the termination of respondent's parental rights, and not the denial of a motion filed by him in the trial court seeking a change in custody. Compare MCL 712A.19b with *Vodvarka v Grasmeyer*, 259 Mich App 499; 675 NW2d 847 (2003). For these reasons, respondent's argument is meritless and unfounded.

Based on these facts, the trial court did not clearly err when it found that termination of respondent's parental rights was in the best interests of DEW, ARW, and ALW.

Affirmed.

/s/ Michael F. Gadola
/s/ Jane E. Markey
/s/ Christopher M. Murray

-5-