*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* WATKINS/MUNSON/WILLIAMS, Minors.

UNPUBLISHED
March 31, 2022

No. 356902
Oakland Circuit Court
Family Division
LC No. 18-859464-NA

Before: K. F. KELLY, P.J., and SAWYER and GADOLA, JJ.

PER CURIAM.

Respondent appeals as of right the orders of the trial court terminating her parental rights to her minor children, TLW, MDM, ELW, under MCL 712A.19b(3)(c)(*i*) (failure to rectify conditions that led to adjudication), (g) (failure to provide proper care and custody), and (i) (parental rights to one or more siblings of the children have been terminated due to serious and chronic neglect or physical or sexual abuse).[1] We affirm.

## I. FACTUAL BACKGROUND[2]

On December 21, 2017, the trial court issued an ex parte order that placed respondent's minor children, TLW, MDM, and ELW, in protective custody with Michigan's Department of Health and Human Services (DHHS) for care and supervision. The trial court concluded that reasonable cause existed to believe that continuing to reside in respondent's home was contrary to the welfare of TLW, MDM, and ELW. Specifically, the trial court found that respondent, while eight weeks pregnant, was the victim of domestic violence, an incident that occurred in May 2017 and in the immediate presence of TLW and MDM. The trial court also identified respondent's frequent use of cocaine, marijuana, opiates, and methadone as a detriment to her ability to parent.

---

[1] At the September 23, 2020 decision and review hearing, the trial court referee found that MCL 712.19b(3)(j) (reasonable likelihood of harm if returned to the home) had not been proven by clear and convincing evidence.

[2] The parental rights of the minor children's respective fathers are not subject to this appeal.

DHHS filed a petition on December 21, 2017, asking the trial court to exercise jurisdiction over TLW, MDM, and ELW, and terminate respondent's parental rights. In the petition, DHHS alleged that respondent's parental rights to her oldest son were terminated on June 26, 2006, "due to her continued drug use which resulted in criminal charges against her." The petition also alleged that the May 2017 domestic violence incident against respondent was committed by ELW's father. DHHS alleged that respondent allowed ELW's father to continue to live in her home despite the existence of a no-contact order between them. The petition further alleged that ELW tested positive for methadone, opiates, and THC at birth, and that respondent screened positive for drugs in November and December of 2017. The trial court authorized the petition filed by DHHS after conducting a preliminary hearing.

In February 2018, DHHS amended its petition twice, with each amendment noting the removal of the request by DHHS to terminate respondent's parental rights. The second amended petition, dated February 15, 2018, included an allegation that ELW's father assaulted respondent at a Pontiac liquor store on February 8, 2018. On March 1, 2018, respondent entered a no-contest plea to the trial court's exercise of jurisdiction over her children, and a parent-agency agreement was adopted. The parent-agency agreement required respondent to refrain from illegal substances, submit to drug screens, and participate in services addressing domestic relations, substance abuse, therapy, and parenting skills. Respondent was also to attend supervised parenting time sessions.

On November 13, 2019, DHHS filed a supplemental petition seeking termination of respondent's parental rights to TLW, MDM, and ELW. The petition alleged that respondent "failed to substantially participate in, or benefit from her Parent Agency Treatment Plan." Also, the petition alleged that respondent did not earn a sufficient income necessary to support herself and her children. The petition further alleged that respondent missed random drug screens, and tested positive for marijuana multiple times and opiates once. In addition, DHHS noted that respondent's parental rights to her oldest son were terminated in June 2006 as a result of her continued drug use and drug-related criminal charges. The trial court referee held a termination hearing over four days where he heard testimony from Carrie Bennis, Garrett Elliott, respondent, Theresa Summers, April Cotto, Tina Woods, and Domenique Nash.

Bennis, formerly a senior foster care case manager for Child Safe, was a worker for ELW from December 2017 until October 2019. Bennis testified that respondent missed about 40 percent of parenting time visits that Bennis supervised, which included a period when respondent was incarcerated. Respondent was also frequently late to visits she did attend. Bennis further recalled a visit when respondent became loud in front of her children when speaking to Bennis. Bennis testified that respondent became more engaged with ELW over time, but never progressed beyond supervised visits because she did not fully comply with her treatment plan.

Elliott, a foster care specialist for DHHS, testified about the domestic violence incident involving respondent that occurred in the presence of TLW and MDM in May 2017. Elliott testified that the incident involved the father of ELW, who continued to reside with respondent after the incident despite a no-contact order. Elliott further testified that ELW was "born drug-positive for methadone, opiates, and THC." In regards to respondent's parent-agency treatment plan, Elliott stated that respondent benefited from parenting education as well as services addressing domestic violence, and was initially testing negative for illegal substances and maintaining sobriety. However, after respondent was released from jail in August 2018,

respondent missed drug screens and tested positive on multiple screens for illegal substances including marijuana and heroin.

According to Elliott, respondent once exhibited inappropriate behavior towards him and TLW during parenting time that resulted in her being asked to leave. Elliott also questioned respondent's resource management, specifically when respondent used her money for marijuana instead of transportation to parenting time visits. Elliott testified that as of the date of the supplemental petition, respondent had obtained appropriate housing, but expressed concern about respondent's mental health. Additionally, Elliott addressed respondent's substance abuse, which according to him, had not improved since respondent's parental rights to her oldest son were terminated in 2006.

Respondent admitted during her testimony that she had been a victim of domestic violence. Respondent explained what she learned in her parent education class, including why she parented out of guilt and how bad relationships in which she had been involved affected her children. Respondent admitted using marijuana, discussed her prescription for methadone, and blamed her positive drug screen for heroin on poppy seed bagels from Kroger. In addition, respondent testified from her perspective about the difficulty of completing drug screens and attending parenting time sessions because of her work schedule, lack of driver's license, and transportation issues.

Respondent reiterated her love for her children, yet believed she did not have a substance abuse issue. Respondent opined that marijuana is not a "heavy substance," and could actually help her parenting rather than serve as a barrier. Respondent admitted taking opiate medications after she fractured her vertebrae in 2009 up until she realized she was pregnant with ELW.

Summers, an employee of Lighthouse, a human services agency, was respondent's case manager. Summers began working with respondent after respondent received assistance from Lighthouse and continued on in their follow-up care program. Summers assisted respondent in maintaining housing and visited with her monthly to discuss respondent's goals, which focused on employment, furnishing her home, and reunification with her children. Summers testified that respondent had made progress in furnishing and maintaining her home, and sustaining employment.

Cotto has known respondent since she was six years old, and described her as a wonderful mother who had good parenting time visits with her children. Cotto knew about respondent's marijuana use, recalling that respondent had used marijuana since age 14. Woods, the foster care specialist for MDM, observed two parenting time visits when respondent acted appropriately with TLW and MDM. Conversely, Woods testified that respondent had not benefited from substance abuse therapy because she continued to smoke marijuana. Woods also believed respondent could have made her drug screens even with her employment schedule. Nash came in contact with respondent while employed as a case aide for Child Safe. Nash observed at least 10 parenting time visits between respondent and ELW, and testified that respondent acted appropriately with ELW.

In a September 23, 2020 decision entered on the record, the trial court referee recommended termination of respondent's parental rights to TLW, MDM, and ELW under MCL

712A.19b(3)(c)(*i*), (g), and (i). The trial court adopted the referee's findings on September 24.[3] Thereafter, the trial court referee conducted a hearing on the issue of whether termination of respondent's parental rights was in the best interests of TLW, MDM, and ELW.

During the best interest hearing, respondent testified that she did not believe her children were removed because of her substance abuse problem. Respondent stated that she did not have a problem with substance abuse and, despite what her parent-agency treatment plan required, marijuana was legal in Michigan and she had a medical reason for using it. Respondent admitted to missing drug screens, citing transportation issues, employment schedules, and a lack of a driver's license as reasons. Respondent also admitted that drug screens in January and July of 2020 tested positive for cocaine and blamed each on laced marijuana. In addition, respondent tested positive for Xanax in September 2020 and admitted giving TLW a phone and directly contacting him in violation of a trial court order forbidding unsupervised contact. Respondent expressed her commitment to treating her anxiety disorder and depression, and reiterated her love for her children, and that TLW, MDM, and ELW need her.

Kathy Spatafora, a clinical psychologist, was qualified as an expert witness for the best interest hearing. Spatafora conducted psychological evaluations of TLW and MDM. TLW stated to Spatafora that he witnessed domestic violence in respondent's home and drug use by respondent. TLW discussed positive interactions with respondent and his frustrations with her case. Spatafora testified that respondent giving TLW a cell phone negatively impacted his mental state and that MDM also acknowledged domestic violence in the home.

Spatafora conducted an evaluation of respondent. Spatafora indicated that respondent was upset with case workers and others involved in her case, and deflected her difficulties with her case to her case worker and attorney. Respondent accused Elliott of manipulating her drug screens. Spatafora believed that respondent minimized her failures in her case as well as her inability to get her children back. Spatafora concluded in her testimony that based on the children's need for permanence, it was in the best interest of TLW, MDM, and ELW to terminate respondent's parental rights.

Elliott noted respondent's steady progress from December 2017 until she was incarcerated in June 2018. Elliott noted that following her release from jail, respondent's progress was minimal and insufficient. Elliott spoke of when respondent's parenting time was suspended in September 2020 because of her conduct at parenting time and for giving TLW a cell phone without prior approval. In addition, Elliott expressed concern to the trial court referee about respondent's contact with ELW's father throughout her case.

---

[3] The trial court order dated September 24, 2020 incorrectly marked MCL 712A.19b(3)(j) as a statutory basis for termination of respondent's parental rights instead of MCL 712A.19b(3)(c)(*i*). As stated on the record, the trial court referee concluded that MCL 712A.19b(3)(j) had not been proven by clear and convincing evidence. Accordingly, our analysis will address whether the trial court erred when it found that MCL 712A.19b(3)(c)(*i*) had been proven by clear and convincing evidence.

Elliott doubted respondent's parenting abilities, specifically because of respondent's propensity to show up late to parenting time visits, at times canceling visits, and for inappropriate conduct, such as being reminded not to discuss the termination case with her children. Elliott spoke of his concern for respondent's substance abuse, especially her marijuana use. In addition to consistently testing positive for THC, respondent tested positive for benzo, a derivative of cocaine, and Alprazolam, which is commonly known as Xanax. In sum, Elliott testified that since August 2018, respondent made almost no progress with her substance abuse, made progress in housing with a safe, appropriate home, but made minimal progress in terms of mental health treatment and regressed in parenting skills. Over the pendency of the case, respondent missed more drug screens than she attended. In Elliott's opinion, termination of respondent's parental rights was in the best interests of the children.

Tina Woods, a foster care specialist with Catholic Charities, also appeared. Woods was the foster care specialist for MDM. Woods encouraged respondent to stop using substances, but testified that it was not in the best interest of MDM to terminate respondent's parental rights. Woods had no concerns regarding respondent and believed that she was motivated and a good mom who was frustrated with the system.

At the conclusion of the best interest hearing, the trial court referee recommended that termination of respondent's parental rights was in the best interests of TLW, MDM, and ELW. The trial court judge approved the recommendations in two orders dated April 6, 2021.[4] Respondent appeals from those orders.

## II. DISCUSSION

## A. STATUTORY GROUNDS

Respondent argues that the trial court erred when it found that statutory grounds for termination of her parental rights were established by clear and convincing evidence. We disagree.

"This Court reviews for clear error the trial court's factual findings and ultimate determinations on the statutory grounds for termination." MCR 3.977(K); *In re White*, 303 Mich App 701, 709; 846 NW2d 61 (2014). A clearly erroneous finding exists "if the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made." *In re Gonzales/Martinez*, 310 Mich App 426, 430-431; 871 NW2d 868 (2015) (quotation marks and citation omitted). "Only one statutory ground need be established by clear and convincing evidence to terminate a respondent's parental rights . . . ." *In re Ellis*, 294 Mich App 30, 32; 817 NW2d 111 (2011).

In this case, the trial court terminated respondent's parental rights pursuant to MCL 712A.19b(3)(c)(*i*), (g), and (i), which provide:

---

[4] One trial court order addressed the termination of respondent's parental rights to TLW and MDM. The second trial court order addressed the termination of respondent's parental rights to ELW.

(3) The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following:

\* \* \*

(c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:

(*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

\* \* \*

(g) The parent, although, in the court's discretion, financially able to do so, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

\* \* \*

(i) Parental rights to 1 or more siblings of the child have been terminated due to serious and chronic neglect or physical or sexual abuse, and the parent has failed to rectify the conditions that led to the prior termination of parental rights.

The trial court referee considered evidence and testimony of respondent's ongoing substance abuse, missed drug screens, failed drug screens, absence from parenting time visits, and inappropriate conduct during parenting time visits she did attend. Specifically, respondent's parental rights to her oldest child were terminated in 2006 because of noncompliance with her parent-agency treatment plan and substance abuse. Since 2006, respondent's substance abuse continued, resulting in ELW testing positive for methadone, opiates, and THC at birth in 2017. During the pendency of this case, respondent tested positive on multiple drug screens for marijuana and heroin, and missed numerous drug screens. According to DHHS, respondent's substance abuse showed no improvement since 2006, despite briefly testing negative for illegal substances and maintaining sobriety from February 2018 until August 2018, when she was released from jail.

In addition, respondent missed about 40 percent of parenting time visits with ELW and was frequently late. Respondent also acted inappropriately during parenting time visits, which led to her being asked to leave. For instance, respondent lashed out at Elliott and TLW, and often discussed the case in front of her children. Respondent never reached a point when unsupervised visitation was allowed. Although respondent made progress in some areas, such as housing and income, she did not accomplish any significant change in the conditions that led the trial court to assume jurisdiction of TLW, MDM, and ELW. See *In re Williams*, 286 Mich App 253, 272; 779 NW2d 286 (2009).

Moreover, respondent cites *In re Sours*, 459 Mich 624; 593 NW2d 520 (1999)[5] as support that she had taken steps to rid herself of abusive relationships. However, unlike the respondent-mother in *In re Sours*, the evidence shows that respondent maintained contact with ELW's father even after the domestic violence incidents in May 2017 and February 2018. Additionally, respondent makes this argument only to concede that her substance abuse continued to be a problem when DHHS filed its supplemental petition to terminate her parental rights.

Accordingly, we find that the trial court did not clearly err in concluding that termination of respondent's parental rights was proper under MCL 712A.19b(3)(c)(*i*). Because one statutory basis for termination was established by clear and convincing evidence, this Court need not address MCL 712A.19b(3)(g) or (i). See *In re Foster*, 285 Mich App 630, 633; 776 NW2d 415 (2009).

## B. BEST INTERESTS

Respondent contends that the trial court clearly erred when it found that termination of her parental rights was in the best interests of TLW, MDM, and ELW. We disagree.

"If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child[ren]'s best interests, the court shall order termination of parental rights and order that additional efforts for reunification of the child[ren] with the parent not be made." MCL 712A.19b(5). This Court reviews the trial court's decision regarding a child's best interests for clear error. *In re Medina*, 317 Mich App 219, 226; 894 NW2d 653 (2016). "A finding is 'clearly erroneous' if, although there is evidence to support it, we are left with a definite and firm conviction that a mistake has been made." *In re HRC*, 286 Mich App 444, 459; 781 NW2d 105 (2009).

Before terminating the parental rights of an individual, the trial court must conclude by a preponderance of the evidence that termination is in the children's best interests. *In re Jones*, 316 Mich App 110, 119; 894 NW2d 54 (2016). When reviewing the trial court's best interest decision, our Court "focus[es] on the child[ren] rather than the parent." *In re Schadler*, 315 Mich App 406, 411; 890 NW2d 676 (2016). "The trial court should weigh all the evidence available to determine the children's best interests." *In re White*, 303 Mich App at 713. "[T]he court may consider the child[ren]'s bond to the parent, the parent's parenting ability, the child[ren]'s need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re Olive/Metts*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012) (citation omitted). In addition, the trial court can consider the probability of the children being returned to the parent's home within the foreseeable future. *In re Kaczkowski*, 325 Mich App 69, 78; 924 NW2d 1 (2018). Furthermore,

---

[5] In *In re Sours*, our Supreme Court held that the abusive conditions that led to adjudication did not exist at the time of the respondent-mother's termination trial. *In re Sours*, 459 Mich at 636-637. The Supreme Court noted that the children initially came within the jurisdiction of the trial court because the respondent-mother failed to protect her children from their abusive father. *Id*. at 636. The Supreme Court reasoned, however, that because the respondent-mother separated herself from her children's abusive father long before her termination trial, she had taken the steps necessary to protect her children and establish that the conditions that led to adjudication no longer existed at the time of her termination trial. *Id*. at 636-637; MCL 712A.19b(3)(c)(*i*).

the trial court may "consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child[ren], the children's well-being while in care, and the possibility of adoption." *In re White*, 303 Mich App at 714.

Here, the trial court record shows that the referee conducted an in-depth and meticulous analysis of the best interest factors. For instance, the referee noted the children's significant bond with respondent, and the negative effect termination of respondent's parental rights would have on them. The referee recognized respondent's continued efforts to reunify with her children despite the suspension of her parenting time in September 2020.

Also, the referee addressed respondent's parenting ability and how it had been affected by her continued substance abuse. Respondent failed to attend drug screens, leading the trial court to question what respondent was hiding. Respondent tested positive for cocaine twice, heroin once, Xanax once, and marijuana multiple times. TLW and MDM were exposed to drug usage in the home and witnessed domestic violence. The referee opined, and the evidence shows, that respondent failed to accept any responsibility for her substance abuse or what her children have experienced while living in her home. Respondent did not progress in most services offered to her, often blaming others for her failures.

The referee considered that respondent's income would provide the children with the stability, permanence, and finality they need, and that her home was appropriate. In addition, the referee deemed respondent's visitation history with TLW, MDM, and ELW to be fair despite a number of missed visits and some lateness. But the children had been in care for more than three years and the uncertainty and instability had started to take its toll. TLW suffered from anxiety, his behavior in school deteriorated, and there was evidence of self-harm.

For example, in July 2020, respondent gave TLW a cell phone and instructed him to keep it a secret. The phone contained text messages from respondent to TLW stating that she would talk to him about what to say to Elliott and help him write a letter to the trial court judge so he and his siblings could be returned to her care. TLW knew that the circumstances under which he had received the cell phone were wrong. Elliott explained during the best interest hearing that in the last 6 to 12 months, TLW had been very upset. While at school, TLW was discovered digging into his arm with his finger nails. When asked what was wrong, TLW explained that he was concerned that if he would contact respondent by phone, others would find out, he would be found at fault, and then he and his siblings would never get to see respondent again. Based on these events, Elliott concluded, and Spatafora agreed, that respondent giving TLW a cell phone without prior approval significantly impacted TLW's mental state.

Respondent contends on appeal that circumstances regarding the children's best interests should have given the trial court pause. Respondent identifies as support, without presenting a proper legal analysis, the reunification of ELW's father with ELW, the wishes of MDM, and an assumption as to what would happen to TLW and MDM in the adoption system upon termination of respondent's parental rights. Such vague and incomplete arguments before this Court do not serve the interests of respondent. "A party may not merely announce a position and leave it to this Court to discover and rationalize the basis for the claim." *National Waterworks, Inc v Int'l Fidelity & Surety, Ltd*, 275 Mich App 256, 265; 739 NW2d 121 (2007).

In light of the record, we conclude that the trial court did not clearly err when if found that termination of respondent's parental rights was in the best interests of TLW, MDM, and ELW.

Affirmed.

/s/ Kirsten Frank Kelly
/s/ David H. Sawyer
/s/ Michael F. Gadola