*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* MACINTOSH, Minors.

UNPUBLISHED
November 17, 2022

Nos. 360005; 360006
Oakland Circuit Court
Family Division
LC No. 2016-848590-NA

Before: RIORDAN, P.J., and BOONSTRA and GADOLA, JJ.

PER CURIAM.

In these consolidated appeals, respondent-father and respondent-mother appeal as of right the trial court's order terminating their parental rights to their five[1] minor children pursuant to MCL 712A.19b(3)(c)(*i*) and (g). Because the trial court did not clearly err in its determinations, we affirm.

## I. BACKGROUND

Respondent-mother has a long history of mental illness. She was diagnosed with bipolar disorder at the age of nine and was in and out of psychiatric hospitals throughout her adolescence. More recently, respondent-mother was diagnosed with attention deficit hyperactivity disorder (ADHD), bipolar disorder, and depression. Respondent-mother's mental illness presented itself in many ways during the case. In 2018, she was hospitalized for six days for mental-health issues. Further, it was reported that respondent-mother often would become overwhelmed with the children, and she sometimes would just "shut down." Respondent-mother also would feel overwhelmed with having to perform other more mundane tasks, such as setting up appointments. A clinical psychologist testified that respondent-mother presented as being very emotionally labile and depressed. The clinical psychologist went on to opine that respondent-mother's psychological pathology undermines her functioning and that she was not capable of providing for the children's stability. A foster care worker testified that respondent-mother did not comply with addressing

---

[1] When the case was initiated in 2016, the trial court acquired jurisdiction over respondents' four older minor children. During the lengthy proceedings, respondent-mother gave birth to another child, and the trial court exercised jurisdiction over that child as well.

her mental-health concerns, contrary to her treatment plan, by not putting forth much effort into attending therapy. In fact, in approximately August 2019, respondent-mother stopped attending her therapy and stopped taking her medication. As of November 2021, respondent-mother still was not participating in mental-health services.

Petitioner, the Department of Health and Human Services (DHHS), filed an initial petition in December 2016, seeking to have the trial court take jurisdiction over the four older minor children. In particular, the petition alleged that the children were often visibly dirty and that the home was unfit for the children because of its filthy condition, which included garbage lying around the home, spilled food, and general clutter. The petition noted that the family currently was homeless and had been asked to leave homes before "due to deplorable conditions." Further, although the family was eligible to receive food assistance or Medicaid benefits, they did not receive those benefits because of their failure to turn in necessary documents. And respondent-mother, in particular, was not receiving mental-health care even though she was diagnosed with ADHD and bipolar disorder. At a pretrial hearing, both respondents pleaded no contest to the allegations in the petition, and the trial court exercised jurisdiction over the children.

As the case progressed, a service worker at Orchards Children's Services worked with respondents. She assisted them on budgeting and hygiene techniques, and made efforts to help them with housing. With the service worker's assistance, respondents were able to obtain housing in a mobile home. Orchards helped the parents obtain that housing by contributing $300 toward the required deposit. Orchards also bought a new furnace, paid for medication for the children, paid a utility bill, paid some back rent, and paid for bedbug spray.

Following a permanency planning hearing in October 2018, the children were returned to respondent-father, contrary to DHHS's recommendation. DHHS's concern was respondent-father's inability to maintain the cleanliness of the home. Previously, the home would deteriorate into deplorable conditions, including the piling of trash and the presence of dog urine in the home. Respondents shortly thereafter were evicted from the mobile home for failure to effectuate exterior repairs on the mobile home and failure to pay rent. DHHS stated that even before the eviction, the mobile home was not appropriate for the children because of the dirty, cluttered, and unsafe conditions. After the eviction, respondents and the four children lived in motels. As of March 21, 2019, they had lived in three different motels. The trial court authorized DHHS's decision to again remove the children.

Afterward, respondent-mother was planning to live separate from respondent-father to focus on her mental health. Respondent-father arranged to live with a friend. The home was deemed by DHHS to be appropriate for the children, and the trial court returned the children to respondent-father's care, with respondent-mother only being allowed supervised visitation.

In April 2019, respondent-mother gave birth to respondents' fifth child, and the trial court took jurisdiction over that child with respect to respondent-mother. The trial court placed the baby with respondent-father, joining her four other siblings. A month later, respondent-mother was living with respondent-father again. In September 2019, it was reported that respondents were homeless and had arranged for the children to stay with friends and family. All of the children, except for the newborn, had no Medicaid or medical insurance because respondent-father did not provide the requested documents by the deadline. Shortly thereafter, DHHS filed a petition for

the trial court to take jurisdiction over the baby with respect to respondent-father and to terminate the parental rights of both respondents to all of the children. At an emergency removal hearing, the trial court removed the children from respondent-father's care and placed them in the care and custody of DHHS.

Following a hearing to determine whether statutory grounds existed to terminate respondents' parental rights, the trial court found that statutory grounds existed to terminate respondent-mother's and respondent-father's parental rights under MCL 712A.19b(3)(c)(*i*) and (g). The trial court stated that it was primarily relying on § 19b(3)(g) for both respondents and all children, but that its rationale for that ground also supported termination under § 19b(3)(c)(*i*) for the four oldest children with respect to respondent-father. The trial court thereafter conducted a best-interest hearing, after which it determined that termination of respondents' parental rights was in the best interests of all the children. These appeals followed.

## II. STANDARD OF REVIEW

This Court reviews a trial court's finding whether a statutory ground for termination has been proven by clear and convincing evidence for clear error. *In re Moss*, 301 Mich App 76, 80; 836 NW2d 182 (2013). Likewise, our review of a trial court's best-interest determination is reviewed for clear error. *In re Olive/Metts*, 297 Mich App 35, 40; 823 NW2d 144 (2012). A finding is clearly erroneous when a reviewing court is left with a definite and firm conviction that a mistake was made. *In re Ellis*, 294 Mich App 30, 33; 817 NW2d 111 (2011).

## III. STATUTORY GROUNDS

Both respondents argue that the trial court clearly erred by finding that statutory grounds existed to terminate their parental rights. We disagree.

A trial court must terminate a parent's parental rights if it finds that a statutory ground under MCL 712A.19b(3) has been established by clear and convincing evidence and that termination is in the child's best interests. *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014). The trial court terminated respondents' parental rights under MCL 712A.19b(3)(c)(*i*) and (g). However, the trial court noted that it was primarily relying on § 19b(3)(g), in part because that ground applied to both respondents and all of the children, whereas § 19b(3)(c)(*i*) did not apply to respondent-father with respect to the youngest child who was born during the proceedings. Accordingly, we will focus on § 19b(3)(g), which permits termination of parental rights under the following circumstances:

> The parent, although, in the court's discretion, financially able to do so, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

"A parent's failure to participate in and benefit from a service plan is evidence that the parent will not be able to provide a child proper care and custody." *In re White*, 303 Mich App at 710. There was ample evidence that neither respondent benefited from their service plans.

At the time of the statutory-ground determination, the children, except for the baby, had been under court jurisdiction for almost four years. One of the primary issues during this time was housing: either there was no housing because the family was homeless or the home they had was in "deplorable" condition. Contrary to respondent-father's position, he was provided with many services to address this barrier to reunification.[2]

A parent-educator with Orchards Children's Services provided life skills instruction to both respondents. Despite these services, which included aspects of home cleanliness and budgeting, the parent-educator did not think that either respondent successfully completed the services. Indeed, after eight months of providing the services, she opined that neither respondent-mother nor respondent-father could keep their home in a position where the children could return.[3]

A DHHS caseworker testified that there had been multiple referrals regarding housing to both respondents. The referred services included the Family Reunification Program through the Detroit Housing Commission, a homelessness specialist for various counties, Oakland Livingston Human Service Agency, Catholic Community Response Team, Salvation Army, Community Housing Network, Rochester Area Neighborhood Housing, RISE Center, Supportive Transitional

---

[2] On appeal, respondent-father argues that DHHS failed to provide or offer adequate services, contrary to MCL 712A.19a(2). In order to preserve such an issue, a respondent must raise the issue when a service plan is adopted or soon afterward or even "later during the proceedings." *In re Atchley*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket Nos. 358502 and 358503); slip op at 2. But *In re Atchley* does not stand for the proposition that a respondent can raise that issue long after those circumstances have changed. In *In re Atchley*, the respondents challenged the adequacy of the services in later dispositional review and permanency planning hearings. *Id*. In the present case, respondent-father cites several instances in the transcript where he purportedly raised the issue of inadequate services. But two of these instances occurred during the statutory-ground hearing, and the other instances occurred during the best-interest hearing. Because respondent-father raises this issue on appeal in context of the trial court's statutory-grounds finding, anything after the trial court rendered its decision regarding statutory grounds, including the best-interest proceedings, is irrelevant. Cf. *Karaus v Bank of New York Mellon*, 300 Mich App 9, 15 n 2; 831 NW2d 897 (2012) (stating that this Court will not consider evidence "that was not before the trial court at the time of the motion hearing"). Furthermore, in addition to the instances cited in the statutory-ground hearing being untimely, they also did not properly raise the issue before the trial court; instead, these instances involved questions directed to a witness. Accordingly, respondent-father failed to preserve the issue whether DHHS provided adequate services, and our review of that issue is for plain error affecting substantial rights. *In re Seay*, 335 Mich App 715, 719; 967 NW2d 883 (2021). In any event, regardless of the standard of review, the numerous services offered to respondent-father as outlined in our opinion easily satisfy DHHS's statutory duty to offer adequate services for reunification. See *In re Hicks/Brown*, 500 Mich 79, 85-86; 893 NW2d 637 (2017).

[3] In addition to the parent-educator's own observations of the home often being in an unsanitary or unsafe condition, she also noted that respondents took an assessment both before starting services and after completing them. Notably, respondents' scores after the completion of services were *worse* than their initial assessments.

Into Rapid Rehousing Program, and a list of low-income housing. The caseworker also told both respondents that if they needed any assistance in calling any of the various agencies or filling out any applications to let her know, but they never notified her that they needed any help. Despite these services, respondents' ability to provide housing, let alone suitable housing, remained an issue at the time of termination, and there was no indication that the situation was going to be resolved within a reasonable period of time considering the ages of the children. Indeed, at the time of termination, there was nothing to suggest that either respondent was capable of providing safe and secure housing for the children.

Another part of respondent-father's Parent-Agency Treatment Plan (PATP) was to maintain health insurance for the children and to maintain therapy services for the children. Respondent-father failed to maintain health insurance. After he lost his private health insurance though work, he was instructed to obtain Medicaid coverage. A Judson Center worker completed the online Medicaid application for respondent-father. But when documents subsequently were requested to be submitted, respondent-father inexplicably failed to provide them. The caseworker testified that at the time of filing the petition for termination, the children still had no health insurance. Also, respondent-father was not compliant with the requirement to maintain the children's therapy because there was evidence that three of the children had stopped going and did not restart by the time the petition to terminate was filed.

Throughout the proceedings, respondent-father demonstrated a lack of ability to follow through on seemingly simple, yet important, tasks, such as providing documents to obtain health insurance or contacting the Friend of the Court to reduce an onerous withholding amount. Indeed, the trial court previously determined that respondent-father's failure to address the withholdings in a timely manner was the cause of their prior eviction from their mobile home. Notably, in his testimony respondent-father agreed. In sum, there is nothing in the evidence to suggest that respondent-father's behavior had changed at the time of the statutory-ground hearing such that he would have been able to consistently provide care and custody for the children in a reasonable time given the ages of the children.

Respondent-mother also was required through her PATP to participate in mental-health services, but during the pendency of the case, in approximately August 2019, she stopped attending her therapy and stopped taking her medication. Thus, respondent-mother was not compliant with this aspect of her PATP.

In sum, with suitable housing still an issue and both respondents failing to comply with their respective treatment plans, the trial court did not clearly err by finding that termination of their parental rights was supported by MCL 712A.19b(3)(g). And because only one ground is necessary to support termination of parental rights, it is not necessary to address whether the trial court erred by relying on MCL 712A.19b(3)(c)(*i*) as an additional ground for termination. See *In re Foster*, 285 Mich App 630, 633; 776 NW2d 415 (2009).

IV. BEST INTERESTS

Respondents argue that the trial court clearly erred by finding that termination of their parental rights was in the best interests of the children. We disagree.

Once a trial court has found that there is a statutory ground to terminate parental rights under MCL 712A.19b(3), the court must terminate the parent's parental rights if it is in the child's best interests. *In re White*, 303 Mich App at 713. In making this best-interest determination, "the court may consider the child's bond to the parent[;] the parent's parenting ability[;] the child's need for permanency, stability, and finality[;] and the advantages of a foster home over the parent's home." *In re Olive/Metts*, 297 Mich App at 41-42 (citations omitted). "[T]he preponderance of the evidence standard applies to the best-interest determination." *In re Moss*, 301 Mich App at 83.

Both respondents contend that they have a strong bond with all five children. But the parent-child bond is only one factor that is pertinent to a best-interest determination. A bond does not necessarily outweigh the children's need for safety, stability, and permanency. The trial court noted that the case had been pending for five years and the family was homeless when it began and not much had changed since then.[4] This Court's rationale in *In re Jones*, 316 Mich App 110, 120; 894 NW2d 54 (2016), applies with equal force in this case:

> Though respondent shared a bond with the children, that bond was outweighed by the children's need for safety, permanency, and stability. Respondent never obtained suitable housing during the course of the proceedings, nor could she meet her own economic or financial needs, let alone the needs of the children. These issues were longstanding and numerous services had been provided to no avail. There was no indication that respondent would be able to rectify the problems in such time that children could be returned to her in the foreseeable future.

Further, with regard to permanency and stability, each of the current foster home placements stated that they were willing to adopt. Considering the length of time the children had been in care and the fact that respondents had not shown during these five years that either was able to provide a safe and stable environment for the children, we are not left with a definite and firm conviction that the trial court made a mistake when it found that termination of respondents' parental rights was in the best interests of each child.

Moreover, respondent-mother also has unaddressed mental-health issues that affected her ability to care for the children. The trial court's finding that respondent-mother had "inconsistently participated in therapeutic services" is not clearly erroneous. As mentioned earlier, in approximately August 2019, respondent-mother stopped attending her therapy and stopped taking her medication. And as of November 2021, respondent-mother still was not participating in mental-health services, leaving her severe mental illness unaddressed. This reinforces our view

---

[4] In her brief on appeal, respondent-mother asserts multiple times that she "presented a plan for housing." Respondent-mother does not explain what this "plan" was, and we were unable to locate any reference to such a plan in the record. Although respondent-mother was living with her parents at the beginning of the best-interest phase of the proceedings, by the end of the proceedings, she and respondent-father were living with friends on a temporary basis, and both respondents told a foster care supervisor that they did not have suitable housing for the children at the time. At best, the foster care supervisor testified that respondents said they had a "prospect of a possible housing." There was no other evidence of what this speculative housing was, what steps remained to acquire this housing, or if it was going to be suitable for the children.

that the trial court did not clearly err by finding that termination of respondent-mother's parental rights was in the children's best interests.

## V. CONCLUSION

The trial court did not err by terminating respondents' parental rights. We affirm.

/s/ Michael J. Riordan
/s/ Mark T. Boonstra
/s/ Michael F. Gadola