*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re REEVES, Minors.

UNPUBLISHED
August 10, 2023

No. 364660
Wayne Circuit Court
Family Division
LC No. 2017-000086-NA

Before: BOONSTRA, P.J., and LETICA and FEENEY, JJ.

PER CURIAM.

Respondent[1] appeals by right the trial court's order terminating her parental rights to her three minor children, AL, AR, and AE, under MCL 712A.19b(3)(g) (failure to provide proper care or custody), and MCL 712A.19b(3)(j) (reasonable likelihood of harm if returned to parent). We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

On May 6, 2022, petitioner, the Department of Health and Human Services (DHHS or petitioner), filed a petition requesting that the trial court take jurisdiction over AL, AR, and AE. The petition alleged that (1) the father and custodial parent of the children had died on February 5, 2022, (2) on March 2, 2022, while respondent was homeless, Children's Protective Services (CPS) investigator Jamie Zhen found AL, AR, and AE residing with their adult sister, who was unwilling to provide for the care and custody of the children, (3) respondent had an extensive history with CPS dating back to 2008, and AL, AR, and AE became temporary court wards between 2017 and 2021, (4) on March 17, 2017, the court had found that respondent possessed inadequate housing, engaged in a domestic violence relationship, and had untreated bipolar disorder, schizophrenia, and depression, and (5) in 2017, respondent was offered a case service plan, which included parenting classes, individual and family therapy, domestic violence counseling, psychological and psychiatric evaluations, and a parent-partner.

---

[1] As we will discuss, the children's father is deceased and is not a party to this appeal.

The petition further alleged that due to respondent's failure to comply with the 2017 case service plan, DHHS eventually filed a supplemental petition on November 22, 2019, but the matter did not result in termination because, on July 29, 2021, the children's father was granted sole legal and physical custody of AL, AR, and AE, with supervised visitation for respondent. Notably, the petition stated that respondent had previously overdosed on opiates in the presence of the minor children. An assessment of respondent following the father's death had revealed that respondent still lacked appropriate housing, stability, and the general ability to provide for the care of AL, AR, and AE. DHHS sought termination of respondent's parental rights at the initial adjudication.

The children were removed from respondent's care and initially placed with relatives or fictive kin. A combined adjudication and termination hearing was held over two days on October 6, 2022 and December 2, 2022. By the time of the termination hearing, AL was placed with fictive kin, AE was placed with a relative, and AR was in licensed nonrelative foster placement. During the adjudication phase on October 6, respondent admitted to the allegations in the petition regarding jurisdiction and statutory grounds for the termination of parental rights. The trial court took judicial notice of the previous neglect cases involving respondent and determined that DHHS had presented clear and convincing evidence to support termination of respondent's parental rights under MCL 712A.19b(3)(g) and (j), stating in relevant part:

> The court finds by a preponderance of the evidence that the children, [AL, AR, and AE], come within MCL 712A.2(b)(1) and (2), based on mother's mental health issues, mother's homelessness, transient issues and the children are without proper care and custody as a result and they are at risk of harm to their emotional well-being and the court further finds that the following statutory grounds to terminate the parental rights of [respondent] to the children, [AL, AR, and AE], have been established by clear and convincing evidence, statutory grounds are MCL 712A.19b(3)(g) and (j), mother failed to complete a prior court order, parent/agency treatment plan for reunification. Mother has a history of mental health issues and other issues that, that plan was designed to rectify and mother failed to comply. The children are made court wards.

On December 2, 2022, during the evidentiary hearing on best interests, the trial court determined that DHHS had established, by a preponderance of the evidence, that termination of respondent's parental rights was in the best interests of AL, AR, and AE. The trial court recognized that AL was placed with fictive kin, AE was in a relative placement, and AR recently transferred to a licensed foster home. The trial court also noted that respondent had refused to address her mental health issues or attend court-ordered evaluations. In terms of respondent's parenting ability, the court noted that respondent's extensive history with CPS, inadequate housing, failure to complete the previous case service plan for four years, and hostile and violent behavior towards case workers, relatives, and fictive kin, were fundamental concerns. Moreover, respondent "was offered extensive services and made no progress with those services toward reunification with the children and she has not rectified the conditions and there is no expectation that she will based on her prior behavior." The trial court expressed that it would consider the wishes of AL and AR because of their respective ages (16 and 14), and recognized there was a bond between respondent and her children; however, the court did not believe that respondent was able to provide a safe and stable home for AL, AR, and AE in the foreseeable future.

The trial court further expressed that there was a continued risk of harm to the health and well-being of AL, AR, and AE if returned to respondent's care because of her unfitness as a parent and repeated lack of effort to develop her parenting skills. The court also addressed the children's relative placements:

> . . . [P]lacement with relatives is a factor weighing against termination, however, the court's consideration of relative placement is far exceeded by the court's view that mother is unable to provide a permanent, safe, stable home. Mother is unfit with regard to parenting ability. She does not have a safe, stable environment for the children. There is no indication to the Court that, that will be the case in the near future. Mother's had numerous opportunities to address the numerous issues that prevent her from being with her children in a safe, suitable, stable environment. The Court will note that termination is in the children's best interests.

The trial court entered a final order terminating respondent's parental rights on December 14, 2022. This appeal followed. On appeal, respondent only challenges the trial court's determination that termination of her parental rights was in the children's best interests.

## II. STANDARD OF REVIEW

"Even if the trial court finds that [petitioner] has established a ground for termination by clear and convincing evidence, it cannot terminate the parent's parental rights unless it also finds by a preponderance of the evidence that termination is in the best interests of the children." *In re Gonzales/Martinez*, 310 Mich App 426, 434; 871 NW2d 868 (2015). This Court reviews for clear error a trial court's best-interests determination. *In re Sanborn*, 337 Mich App 252, 276; 976 NW2d 44 (2021). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re BZ*, 264 Mich App 286, 296–297; 690 NW2d 505 (2004).

## III. BEST-INTEREST DETERMINATION

Respondent argues that the trial court clearly erred when it determined that termination of respondent's parental rights was in the best interests of AL, AR, and AE under MCL 712A.19b(5). We disagree.

"If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of parental rights and order that additional efforts for reunification of the child with the parent not be made." MCL 712A.19b(5). In making its determination, the trial court "should weigh all the evidence available to it," and may consider

> the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home. Other considerations include the length of time the child was in care, the likelihood that the child could be returned to her parents' home within the

foreseeable future, if at all, and compliance with the case service plan.  [*In re Atchley*, 341 Mich App 332, 346-347; ___ NW2d ___ (2022), quoting *In re Payne/Pumphrey/Fortson*, 311 Mich App 49, 63; 874 NW2d 205 (2015) (quotation marks and citation omitted).]

Moreover, "[a] child's placement with relatives is a factor that the trial court is required to consider."  *In re Gonzales/Martinez*, 310 Mich App at 434.  While placement with a relative weighs against termination, it is not dispositive because a trial court "may terminate parental rights in lieu of placement with relatives if it finds that termination is in the child's best interests."  *In re Olive/Metts Minors*, 297 Mich App 35, 43; 823 NW2d 144 (2012).  In the majority of cases, it is in the child's best interests to be placed with his or her siblings.  *Id*. at 41-42.

We conclude that the trial court did not clearly err when it determined that termination of respondent's parental rights was in the best interests of AL, AR, and AE.  Petitioner presented evidence regarding respondent's repeated failure to abide by a case service plan, unresolved mental health issues, inadequate housing, inconsistent parenting time, and general lack of parenting ability.  During the previous initiation of child protective proceedings between 2017 and 2021, respondent was offered extensive services by DHHS, which included parenting classes, individual therapy, domestic violence counseling, mental health services, psychological and psychiatric evaluations, supportive visitations, and a parent-partner, but respondent failed to make any progress.  In the current proceedings, Brittney Barnes, a CPS investigator, noted that CPS had attempted unsuccessfully to meet with respondent to complete an evaluation of respondent's needs.  Moreover, while respondent asserted that she was willing to participate in intensive family-based services and reunification planning through the Clinic for Child Study, evidence showed that a clinician from the clinic had been unable to contact respondent and respondent had failed to appear for a scheduled appointment.

Respondent argues that her fundamental liberty interest as a natural parent does not evaporate simply because she has not been a model parent or previously lost custody of her children.  However, this Court has held that, "at the best-interest stage, the child's interest in a normal family home is superior to any interest the parent has."  *In re Moss*, 301 Mich App 76, 89; 836 NW2d 182 (2013).  Respondent's parenting ability, or lack thereof, weighed in favor of terminating respondent's parental rights.  Respondent only visited her minor children twice over Zoom since the initiation of these proceedings despite petitioner offering respondent in-person visitation on several occasions.  During the two visitations respondent attended, respondent was belligerent, hostile, and generally acted inappropriately toward AL, AR, and AE.  During the evidentiary hearing, Heather Gillespie, a foster care worker, testified in relevant part:

[respondent] has appeared for two visits.  The visits were she—you know, she asked how the kids were, and when they would respond, she'd start to question me about the issues or whatever they said.  She has been very belligerent and hostile in front of her children at these parenting time visits, even when she was redirected and informed many, many times that, that is not what parenting time is for, and these are conversations to have without her children present . . . .  She would try to talk about the case in front of them and even when redirected and informed she cannot talk about it with them . . . .  [S]he would not use the time to be a parent and the

-4-

two times she did come to the parenting times, they were both over Zoom per her requests.

Gillespie further testified that during phone calls with respondent to discuss the case, respondent was hostile and disrespectful, which resulted in Gillespie terminating the calls. The trial court also noted that respondent refused to see a psychiatrist, acquire medication, or otherwise remedy her depression, schizophrenia, or bipolar disorder diagnoses, despite her extensive history of untreated mental illness and attendant negative consequences. Furthermore, respondent's history of neglect tracked back to 2017, which led to the initial removal of AL, AR, and AE from her care. The record showed that respondent had failed to even attempt to remedy any of the issues that led to the children's removal, and that the children's best interests would not be served by returning them to respondent's care.

Further, as already discussed, the trial court appropriately considered the children's placements, including the relative placement of AE and the fictive kin placement of AL, weighed alternative placement options for each child, and evaluated each child's best interests on an individual basis. The trial court additionally expressed that it had considered the wishes of AL and AR because of their respective ages, and recognized there was a bond between respondent and her children. However, the court did not believe respondent could provide permanency, stability, and care for the minor children, which was particularly critical in light of AR's hospitalization due to suicidal ideation, and AL's recent fatherhood. We find no clear error in the trial court's determination that other issues outweighed the bond between respondent and her children. See *In re Jones*, 316 Mich App 110, 120; 894 NW2d 54 (2016) ("Though respondent shared a bond with the children, that bond was outweighed by the children's need for safety, permanency, and stability.").

In sum, approximately five years after the initiation of the original child protective proceedings, respondent had amply demonstrated that she is incapable of rectifying the conditions that led to the removal of her children within a reasonable period of time. Respondent had made essentially no effort to engage in services, struggled with significant mental health issues, and had only attended supervised parenting time virtually on two occasions since June 2022. While AL, AR, and AE were living separately, AL and AE were thriving in their respective placements, and AR was receiving the critical care needed for his recovery. Any bond between the children and respondent was outweighed by children's need for stability, permanency, and finality. Therefore, the trial court did not clearly err by finding that termination of respondent's parental rights was in the best interests of AL, AR, and AE. *Sanborn*, 337 Mich App at 276.

Affirmed.

/s/ Mark T. Boonstra
/s/ Anica Letica
/s/ Kathleen A. Feeney

-5-