*In re* JONES

Docket No. 330945. Submitted June 10, 2016, at Detroit. Decided
     June 28, 2016, at 9:00 a.m.
     Respondent's parental rights to her minor children, SL and CJ,
     were terminated in the Kalamazoo Circuit Court, Juvenile Divi-
     sion, under MCL 712A.19b(3)(c)(*i*), (c)(*ii*), (g), (j), and (*l*). The
     children had different fathers. During the proceedings, respon-
     dent claimed that CJ's father "might be Native American," "might
     have a little Indian in him," and "says he might be Cherokee."
     Petitioner, the Department of Health and Human Services, sent a
     notice to the Department of the Interior, Bureau of Indian Affairs
     (BIA), and the BIA concluded that it did not have enough
     information to make a determination of tribal affiliation at that
     time. No further evidence concerning the question of CJ's heri-
     tage appeared in the trial court record. The court, Gerald Scott
     Pierangeli, J., found by a preponderance of the evidence that
     termination of respondent's rights to SL and CJ was in the
     children's best interests. Respondent appealed.
          The Court of Appeals *held*:
          1. The Indian Child Welfare Act (ICWA), 25 USC 1901 *et seq.*,
     and the Michigan Indian Family Protection Act (MIFPA), MCL
     712B.1 *et seq.*, establish substantive and procedural protections
     for when an Indian child is involved in a child protective proceed-
     ing. The suggestion that a child might be an Indian child triggers
     the notice requirements of the ICWA, 25 USC 1912(a), and the
     MIFPA, MCL 712B.9(1), and the petitioner is required to give
     notice to select entities that a child under the court's jurisdiction
     might be an Indian child. In this case, it was suggested that CJ's
     father was of Indian heritage. Therefore, petitioner was obligated
     to notify the BIA and the tribe possibly affiliated with CJ that a
     child under the court's jurisdiction could be an Indian child.
     Petitioner gave notice to the BIA, but there was no evidence that
     notice was ever sent to the Cherokee tribe. Similarly, no notice
     was sent to the tribes, if any, in Kalamazoo County as MCL
     712B.9(3) requires when, as in this case, petitioner is not able to
     initially determine the tribe or tribes with which the child might
     be affiliated. The trial court clearly erred by terminating respon-

dent's parental rights to CJ without first having satisfied the notice requirements of the ICWA and the MIFPA.

2. Under MCL 712.19b(5), the trial court must find by a preponderance of the evidence that termination is in the best interests of the child. In this case, the trial court did not clearly err by finding that termination of respondent's parental rights to CJ and SL was in their best interests given the children's need for safety, permanency, and stability.

Affirmed with regard to SL. Conditionally reversed and remanded with regard to CJ.

*Jeffrey S. Getting*, Prosecuting Attorney, and *Heather S. Bergmann*, Assistant Prosecuting Attorney, for petitioner.

*R. Scott Ryder* for respondent.

Before: MURPHY, P.J., and SAAD and BORRELLO, JJ.

PER CURIAM. Respondent mother appeals as of right the trial court's order terminating her parental rights to the minor children, SL and CJ, under MCL 712A.19b(3)(c)(*i*) (conditions leading to adjudication continue to exist), (c)(*ii*) (other conditions implicating jurisdiction exist and were not rectified), (g) (failure to provide proper care or custody), (j) (reasonable likelihood of harm if child returned to parent's home), and (*l*) (parental rights to another child previously terminated).[1] We affirm with respect to SL and conditionally reverse and remand for further proceedings relative to CJ.

---

[1] This Court recently declared that MCL 712A.19b(3)(*l*) "violates the due-process protections of the federal and state Constitutions . . . ." *In re Gach*, 315 Mich App 83, 101; 889 NW2d 707 (2016). Regardless, only one statutory ground need be established in order to support termination of parental rights. MCL 712A.19b(3); *In re Ellis*, 294 Mich App 30, 32; 817 NW2d 111 (2011). And on appeal, respondent does not directly challenge the trial court's findings concerning the statutory grounds for termination.

Respondent argues that the trial court and petitioner, the Department of Health and Human Services (DHHS), failed to make sufficient efforts to determine whether CJ is an Indian child under the Indian Child Welfare Act (ICWA), 25 USC 1901 *et seq.*, and the Michigan Indian Family Preservation Act (MIFPA), MCL 712B.1 *et seq.* This Court has observed that the MIFPA was designed to protect the best interests of Indian children and to promote the security and stability of Indian families and tribes and that "[t]he ICWA and the MIFPA each establish various substantive and procedural protections for when an Indian child is involved in a child protective proceeding." *In re England*, 314 Mich App 245, 251; 887 NW2d 10 (2016), citing MCL 712B.5(a) and *In re Spears*, 309 Mich App 658, 669; 872 NW2d 852 (2015).[2]

Under the ICWA, the United States Congress provided, in pertinent part:

> In any involuntary proceeding in a State court, where the court *knows or has reason to know* that an Indian child is involved, the party seeking the foster care placement of, or termination of parental rights to, an Indian child shall notify the parent or Indian custodian and the Indian child's tribe, by registered mail with return receipt requested, of the pending proceedings and of their right of

---

[2] An "Indian child" is defined in the ICWA as "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." 25 USC 1903(4). "[O]nly the Indian tribe can determine its membership." *In re Morris*, 491 Mich 81, 100; 815 NW2d 62 (2012). Under the MIFPA, an "Indian child" is defined as "an unmarried person who is under the age of 18 and is either of the following (i) [a] member of an Indian tribe [or] (ii) [e]ligible for membership in an Indian tribe as determined by that Indian tribe." MCL 712B.3(k). "The definition of 'Indian child' in MIFPA is similar to that in ICWA, but does not require the child who is eligible for membership to also be the biological child of a member of an Indian tribe." *In re KMN*, 309 Mich App 274, 287; 870 NW2d 75 (2015).

intervention. If the identity or location of the parent or Indian custodian and the tribe cannot be determined, such notice shall be given to the Secretary in like manner, who shall have fifteen days after receipt to provide the requisite notice to the parent or Indian custodian and the tribe. No foster care placement or termination of parental rights proceeding shall be held until at least ten days after receipt of notice by the parent or Indian custodian and the tribe or the Secretary . . . . [25 USC 1912(a) (emphasis added).][3]

With respect to interpretation of the "reason to know" language in 25 USC 1912(a), our Supreme Court construed the phrase broadly, determining that the notice requirement of 25 USC 1912(a) is triggered when there exists "sufficiently reliable information of virtually any criteria on which [tribal] membership might be based," including "information *suggesting* that the child, *a parent of the child*, or members of a parent's family are tribal members[.]" *In re Morris*, 491 Mich 81, 108 & n 18; 815 NW2d 62 (2012) (emphasis added). "Once sufficient indicia of Indian heritage are presented to give the court a reason to believe the child is or *may be* an Indian child, resolution of the child's and parent's tribal status requires notice to the tribe or, when the appropriate tribe cannot be determined, to the Secretary of the Interior." *Id.* at 108 (emphasis added); see also *In re Johnson*, 305 Mich App 328, 330-332; 852 NW2d 224 (2014) (holding that the notice requirement of ICWA was triggered when the trial court had information that the child's grandmothers were Native Americans).

The MIFPA, which was enacted pursuant to 2012 PA 565, effective January 2, 2013, contains language similar to that found in 25 USC 1912(a):

---

[3] "Secretary" means the Secretary of the Interior. 25 USC 1903(11).

In a child custody proceeding,[4] if the court *knows or has reason to know* that an Indian child is involved, the petitioner shall notify the parent or Indian custodian and the Indian child's tribe, by registered mail with return receipt requested, of the pending child custody proceeding and of the right to intervene. If the identity or location of the parent or Indian custodian and the tribe cannot be determined, notice shall be given to the secretary[5] in the same manner described in this subsection. The secretary has 15 days after receipt of notice to provide the requisite notice to the parent or Indian custodian and the tribe. [MCL 712B.9(1) (emphasis added).]

In the MIFPA, the Legislature expressly set forth a nonexclusive list of circumstances that trigger the notification mandate found in MCL 712B.9(1):

Circumstances under which a court, the department,[6] or other party to a child custody proceeding has reason to believe a child involved in a child custody proceeding is an Indian include, but are not limited to, any of the following:

\* \* \*

(b) Any public or state-licensed agency involved in child protection services or family support has *discovered information that suggests* that the child is an Indian child.

\* \* \*

---

[4] A "child custody proceeding" includes removal actions, MCL 712B.3(b)(*i*), and "[a]ny action resulting in the termination of the parent-child relationship," MCL 712B.3(b)(*ii*). The definitions section of the MIFPA, MCL 712B.3, was amended by 2016 PA 26, effective May 30, 2016; however, that amendment did not substantively alter any of the statutory definitions discussed in this appellate opinion, assuming the amendment is even generally applicable to these proceedings.

[5] The term "Secretary" as used in the MIFPA refers to the Secretary of the Interior. MCL 712B.3(u), as amended by 2016 PA 26 (the Legislature amended MCL 712B.3(u) to capitalize the title of the officeholder).

[6] "Department" means the Department of Human Services or any successor department or agency. MCL 712B.3(e).

(e) An officer of the court involved in the proceeding has knowledge that the child *may be* an Indian child. [MCL 712B.9(4) (emphasis added).]

In the instant case, multiple petitions had been filed and numerous hearings had been conducted over the span of several years. In January 2011, respondent had indicated to the trial court that CJ's father "might be Native American," although she could not identify any particular tribal affiliation.[7] Nothing came of the matter, the petition pending at that time was dismissed, and the court terminated its jurisdiction. In December 2012, the trial court inquired into Native American heritage, and a child protective services (CPS) worker indicated that there was no Indian heritage or tribal connection. However, the petition that was pending at that particular time pertained solely to SL, not CJ, so the response by the CPS worker is irrelevant to our analysis because there is no argument before us that SL may be an Indian child.[8] In November 2013, in relation to a new petition that did include CJ, respondent informed the trial court that CJ's father "might have a little Indian in him." She further asserted that CJ's father "says he might be Cherokee[,] [b]ut he's not sure." The trial court indicated that the issue needed to be explored, noting that an effort should be made to obtain some cooperation from CJ's father on the matter.

---

[7] CJ's father's parental rights were also eventually terminated but are not at issue in this appeal. He was generally uncooperative and did not participate in services. We note "that a parent of an Indian child cannot waive the separate and independent ICWA rights of an Indian child's tribe . . . ." *In re Morris*, 491 Mich at 89.

[8] For this reason, we reject the petitioner's appellate argument that the CPS worker's statements in December 2012 reflected resolution of the question regarding CJ's potential Indian heritage.

At a pretrial conference in December 2013, a DHHS worker informed the trial court that she had spoken to CJ's father, who advised her that he "thinks there may be" Native American heritage in his family, but he was simply unsure. The DHHS worker told the trial court that she directed CJ's father to gather family names for her, so that she could submit paperwork checking on tribal membership or eligibility. The trial court ordered further investigation on the issue and ordered CJ's father *to fully cooperate.* Thereafter, in late December 2013, the DHHS worker sent a notice to the Department of the Interior, Bureau of Indian Affairs (BIA), in an effort to determine CJ's enrollment, or eligibility status for enrollment, in an Indian tribe.[9] The notice only included the names, birthdates, and addresses of respondent, CJ, and CJ's father. In January 2014, the BIA responded in writing to the inquiry, stating that there was "insufficient information to determine tribal affiliation" at that time. At a review hearing in September 2014, the trial court noted that no exhibit had yet been filed regarding the inquiry into CJ's Native American heritage, and respondent reiterated her belief that CJ's father might be Cherokee. At the next hearing in November 2014, the notice sent to the BIA and the BIA's response were admitted. There is no further discussion or document in the record pertaining to Native American heritage or whether CJ might be an Indian child.

We first conclude that, for purposes of the ICWA, there was sufficiently reliable information—of virtually any criteria—of tribal membership or eligibility for membership, because the trial court had informa-

---

[9] There is no indication in the record about whether the DHHS worker had been able to procure any further information from CJ's father regarding any family ties to an Indian tribe.

tion obtained from respondent and CJ's father suggest-
ing that CJ's father might have Native American
heritage. *In re Morris*, 491 Mich at 108 & n 18; *In re
Johnson*, 305 Mich App at 332. We reach this conclu-
sion because the Supreme Court made abundantly
clear in *In re Morris* that if we are to err, we are to err
on the side of caution, protecting the interests of
Indian children, families, and tribes to avoid later
potential disruptions in the child's life. *In re Morris*,
491 Mich at 88-89, 106-107. Additionally, for purposes
of the MIFPA, we conclude that the DHHS discovered
information that "suggest[ed]" that CJ is an Indian
child, MCL 712B.9(4)(b), and that the trial court and
counsel had knowledge that CJ *"may be* an Indian
child," MCL 712B.9(4)(e) (emphasis added).[10] Accord-
ingly, we hold that the notice requirements of both 25
USC 1912(a) and MCL 712B.9(1) were triggered in this
case.

The record reflects that notice was sent to the Secre-
tary of the Interior or the BIA, but we note that such
notice only becomes obligatory when "the identity or
location of the parent or Indian custodian and the tribe
cannot be determined[.]" 25 USC 1912(a); MCL
712B.9(1). The first step in the process is to send the
appropriate notification to "the parent or Indian custo-
dian *and* the Indian child's tribe," if determinable. 25
USC 1912(a) (emphasis added); MCL 712B.9(1) (empha-
sis added). The trial court and the DHHS were familiar

---

[10] The need to proceed cautiously in order to avoid the potential future
disruption of lives is also apparent under the MIFPA:

Any Indian child who is the subject of any action for termina-
tion of parental rights under state law, any parent or Indian
custodian from whose custody the child was removed, and the
Indian child's tribe may petition any court of competent jurisdic-
tion to invalidate the action upon a showing that the action
violated any provision of this section. [MCL 712B.15(5).]

with the identity and location of respondent and CJ's father, who were both fully apprised of the pending proceedings. Regarding the identity of the Indian tribe, respondent, although unsure, thought that CJ's father might have Cherokee heritage, and, as noted earlier, she told the trial court that CJ's father informed her that "he might be Cherokee." Given that the DHHS and the trial court had information that at least suggested the possibility of Cherokee heritage, absent mention of any other potential tribal affiliation, notice should have been sent to the Cherokee tribe for purposes of 25 USC 1912(a) and MCL 712B.9(1). There is no indication in the record that such notice was sent. Consistently with the remedy set forth in *In re Morris*, 491 Mich at 114-123, and given that we reject respondent's argument concerning the children's best interests, we conditionally reverse the order of termination with respect to CJ and remand for compliance with the notification requirements in the ICWA and the MIFPA. Considering that there is no argument or indication in the record that SL is an Indian child, there is no basis to conditionally reverse the termination of parental rights to SL.

Moreover, aside from 25 USC 1912(a) and MCL 712B.9(1), respondent also presents an argument under MCL 712B.9(3), which provides:

> The department shall actively seek to determine whether a child at initial contact is an Indian child. If the department is able to make an initial determination as to which Indian tribe or tribes a child brought to its attention may be a member, the department shall exercise due diligence to contact the Indian tribe or tribes in writing so that the tribe may verify membership or eligibility for membership. If the department is unable to make an initial determination as to which tribe or tribes a child may be a member, the department shall, at a minimum,

contact in writing the tribe or tribes located in the county where the child is located and the secretary.

Given the multiple references in the record to possible Cherokee heritage, the DHHS had adequate information to make an *"initial* determination" that CJ *"may* be a member" of the Cherokee tribe, implicating a duty to "exercise due diligence to contact" the Cherokee tribe "in writing so that the tribe may verify membership or eligibility for membership." MCL 712B.9(3) (emphasis added). This was not done. Furthermore, assuming that the DHHS was "unable to make [such] an initial determination" relative to the Cherokee tribe, there is no indication in the record, nor does the DHHS argue on appeal, that the tribe or tribes located in Kalamazoo County were given written notification, which is a minimal requirement under the final sentence in MCL 712B.9(3).[11] Indeed, the DHHS does not even present an appellate argument under MCL 712B.9(3), despite respondent's partial reliance on the provision. Accordingly, MCL 712B.9(3), along with 25 USC 1912(a) and MCL 712B.9(1), serves as a basis to order conditional reversal with regard to CJ. On remand, notice must be sent to the Cherokee tribe and, if one exists, to any tribe or tribes in Kalamazoo County.

Lastly, respondent challenges the trial court's finding that termination of her parental rights was in the children's best interests. The trial court must find by a preponderance of the evidence that termination is in the best interests of a child. *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013); see also MCL 712A.19b(5). We review the trial court's decision for clear error.

---

[11] We acknowledge that we do not know whether there are any Indian tribes located in Kalamazoo County. That matter will have to be explored on remand.

MCR 3.977(K); *In re HRC*, 286 Mich App 444, 459; 781 NW2d 105 (2009). A finding is clearly erroneous if it leaves us with a definite and firm conviction that a mistake was made. *In re HRC*, 286 Mich App at 459. Factors to be considered include "the child's bond to the parent, . . . the parent's parenting ability, . . . the child's need for permanency, stability, and finality, . . . and the advantages of a foster home over the parent's home." *In re Olive/Metts Minors*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012) (citations omitted). Further, we may also consider whether it is likely "that the child could be returned to her parents' home within the foreseeable future, if at all." *In re Frey*, 297 Mich App 242, 249; 824 NW2d 569 (2012).

The trial court, in this case, did not clearly err by finding that termination of respondent's parental rights was in the children's best interests. Though respondent shared a bond with the children, that bond was outweighed by the children's need for safety, permanency, and stability. Respondent never obtained suitable housing during the course of the proceedings, nor could she meet her own economic or financial needs, let alone the needs of the children. These issues were longstanding, and numerous services had been provided to no avail. There was no indication that respondent would be able to rectify the problems in such time that the children could be returned to her in the foreseeable future. There were also serious concerns with respondent's history of bringing inappropriate individuals—including men with histories of criminal sexual conduct—around her children. Respondent failed to address this issue in counseling and minimized the matter throughout the proceedings. Finally, even though the minor children were not in preadoptive placements, any further delay in providing them

permanency by allowing respondent additional time to improve her situation was not in the children's best interests. The trial court did not clearly err by finding that it was in the children's best interests to terminate respondent's parental rights.

We affirm with respect to the termination of respondent's parental rights to SL. We conditionally reverse the order terminating respondent's parental rights to CJ, and we remand for further proceedings consistent with this opinion. We do not retain jurisdiction.

MURPHY, P.J., and SAAD and BORRELLO, JJ., concurred.