*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* K. L. UPSHAW, Minor.

UNPUBLISHED
October 07, 2024
2:15 PM

No. 366519
Wayne Circuit Court
Family Division
LC No. 2022-000659-NA

Before: BOONSTRA, P.J., and JANSEN and N. P. HOOD, JJ.

PER CURIAM.

Respondent-father appeals by right the trial court's order terminating his parental rights to his minor child, KU,[1] under MCL 712.19b(3)(b)(*i*), (b)(*ii*), (j), and (k)(*v*). We affirm.

## I. BACKGROUND

In April 2022, the Department of Health and Human Services (DHHS or petitioner) filed a petition for removal with respect to three children, including KU. The petition was filed after the death of KU's half-sibling, AU, from fentanyl toxicity while he was under the care of respondent and AU's mother, CB. In relevant part, the petition alleged that it was contrary to the welfare of the children to remain in the care of CB and their respective fathers, including respondent as KU's father, because of: (a) abandonment; (b) failure to protect; (c) unfit home; (d) neglect; (e) mental health concerns; (f) medical neglect; (g) educational neglect; and (h) substance abuse. The family had been the subject of fifteen prior Children's Protective Services (CPS) complaints, five of which were substantiated for physical neglect, medical neglect, improper supervision, substance abuse, and threatened harm, as well as the complaint regarding the death of AU. Petitioner alleged that respondent and KU's mother were negligent in seeking and maintaining medical care for the children; further, petitioner alleged that respondent and KU's mother had histories of substance

---

[1] KU's mother was also respondent in the proceedings below, and her rights to KU were terminated by the same order of the trial court; she is not, however, a party to this appeal. Accordingly, we will hereafter use "respondent" to refer to KU's father.

abuse, which impaired their ability to properly supervise and make appropriate decisions for their children. The petition noted that CPS had administered a drug screen for respondent on April 11, 2022, and that respondent had tested positive for marijuana, opiates, morphine, and fentanyl.

The trial court authorized the petition and removed KU from respondent's care. Respondent was granted supervised parenting time. The trial court determined that the permanency plan for KU was adoption. In May 2023, respondent entered a no-contest plea to the existence of grounds for the exercise of the trial court's jurisdiction and statutory grounds for termination of his parental rights under MCL 712A.19b(3)(b)(*i*), (b)(*ii*), (j), and (k)(*v*). The trial court found, based on this plea, that respondent had a history of substance abuse and had improperly supervised and medically neglected AU, causing his death. The parties then agreed to a best-interests hearing.

At the best-interests hearing, KU's CPS foster care worker, Christopher Troutman, testified that KU was living in a suitable home that met his needs. Troutman further testified that respondent and KU shared a bond, that respondent had engaged in weekly virtual parenting time visits with KU and that the visits had gone well; however, Troutman opined that termination was still in KU's best interests based on the death of AU while in respondent's care, respondent's recent drug use, and the lack of documentation provided regarding respondent's housing and income. Respondent testified that he no longer used fentanyl, but that he had used heroin until "about a month" before the hearing. Respondent testified that his home was clean and suitable for KU to live in and that he was employed, and he provided pay stubs and a lease to the trial court. A CPS investigator, Princess Walker, testified that numerous services had been provided to respondent and KU's mother before AU's death, but that respondent had not benefited from them.

The trial court found by a preponderance of the evidence that it was in the best interests of KU to terminate respondent's parental rights, noting that respondent had been provided with many services regarding AU, and yet had failed to protect him from ingesting fentanyl. The trial court acknowledged the bond between respondent and KU. However, the trial court also noted that KU was relatively close to the age at which AU had died, and that he could be subject to the same risk of ingesting dangerous substances that had resulted in AU's death if he were returned to respondent's care. This appeal followed.

## II. STANDARD OF REVIEW

"We review for clear error the trial court's determination of best interests." *In re Sanborn*, 337 Mich App 252, 276; 976 NW2d 44 (2021). We also review for clear error a trial court's findings of fact. *Id.* "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *Id*. (quotation marks and citation omitted).

## III. ANALYSIS

Respondent argues that the trial court erred by determining that termination of his parental rights was in KU's best interests. We disagree.

Initially, we note that although respondent's statement of the questions involved on appeal only pertains to best interests, respondent's appellate brief contains arguments concerning

statutory grounds for termination. Under the court rules, an issue must be included in the statement of questions involved. See MCR 7.212(C)(5) and MCR 7.205(E)(4). In any event, respondent pleaded no contest to the facts establishing jurisdiction and statutory grounds. The trial court found that there was improper supervision and medical neglect of KU, resulting in the death of his sibling from fentanyl toxicity. "Respondent may not assign as error on appeal something that she deemed proper in the lower court because allowing her to do so would permit respondent to harbor error as an appellate parachute." *Id*. Respondent has not challenged the validity of his plea, and accordingly any arguments concerning jurisdiction or statutory grounds for termination are waived. See *In re Hudson*, 294 Mich App 261, 264; 817 NW2d 115 (2011).

Relatedly, to the extent that respondent argues that he should have been provided with additional services or given additional time to complete services, such an argument is unavailing. Respondent's parental rights were terminated at the adjudication and initial disposition based on the death of KU's sibling. "Generally, reasonable efforts must be made to reunite the parent and children unless certain aggravating circumstances exist." *In re Moss*, 301 Mich App 76, 90-91; 836 NW2d 182 (2013). See also MCL 712A.18f(4) and MCL 712A.19a(2). "However, the petitioner is not required to provide reunification services when termination of parental rights is the agency's goal." *Moss*, 301 Mich App at 91 (quotation marks and citation omitted); see also *In re Terry*, 240 Mich App 14, 25, n 4; 610 NW2d 563 (2000); MCL 712A.18f(1)(b). Respondent has not established that the trial court erred by not ordering petitioner to make reunification efforts when it sought termination at the initial disposition hearing and respondent pleaded no-contest to jurisdiction and statutory grounds for termination. See MCR 3.977(E), *Moss*, 301 Mich App at 91; MCL 712A.19b(4).

"Even if the trial court finds that the [DHHS] has established a ground for termination by clear and convincing evidence, it cannot terminate the parent's parental rights unless it also finds by a preponderance of the evidence that termination is in the best interests of the children." *Sanborn*, 337 Mich App at 276 (quotation marks and citation omitted). "In making its best-interest determination, the trial court may consider the whole record, including evidence introduced by any party." *Id*. (quotation marks and citation omitted). "[T]he child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home, are all factors for the court to consider when deciding whether termination is in the best interests of the child." *Id*. at 276-277 (quotation marks and citation omitted). "The trial court may also consider the child's age, inappropriate parenting techniques, and continued involvement in domestic violence." *Id*. at 277. "It may further consider visitation history, the parent's engaging in questionable relationships, the parent's compliance with treatment plans, the child's well-being in care, and the possibility of adoption." *Id*. "[T]he focus at the best-interest stage has always been on the child, not the parent." *Moss*, 301 Mich App at 87.

In this case, a preponderance of the evidence supported a finding that termination of respondent's parental rights was in KU's best interests. Although respondent emphasizes that the evidence supports that KU was bonded with respondent, the parent-child bond is only one factor for the trial court to consider. The trial court was also presented with evidence establishing respondent's extensive substance-abuse history and the death of KU's sibling from accidentally ingesting his parents' drugs. "A parent's substance-abuse history is also relevant to whether termination is in the child's best interests." *In re Rippy*, 330 Mich App 350, 361; 948 NW2d 131 (2019). Respondent tested positive for fentanyl in a drug screen taken after AU died from fentanyl

toxicity while under respondent's care in April 2022. Additionally, on the date of AU's death, the CPS investigation revealed that the home was messy, hot, and smelled of cigarette smoke. Respondent continued abusing substances after AU's death and after KU's removal from the home. Respondent testified that the last time he used heroin was only "about a month" before the best interests hearing in May 2023. In determining whether the termination of respondent's parental rights was in KU's best interest, the trial court stated: "[Respondent] ha[s] had an ongoing substance abuse disorder. . . . [T]here's education neglect on the part of the children, and there is medical neglect as it relates to the children."

Respondent asserts that he would like to work on a treatment plan and was never assigned one in the past. A discussed, petitioner was not required to offer a treatment plan when it sought termination at the initial dispositional hearing. Further, Walker testified that respondent was provided services beginning in 2017, including: "Family First Services, Drug Screens from CPS, [Family Together Building Solutions] Services. . . ." The latter services were offered to respondent and CB to "make sure that the children remain in a safe and suitable environment." Early On Services were offered because of AU's premature birth, to "provide additional services and support to the family. . . ." Walker testified that respondent did not benefit from these services. The trial court noted at the best-interest hearing that there was no formal treatment plan, but that respondent and CB had been offered services beginning in 2017. The trial court specifically noted that the "Early On Services were not successfully completed in this case."

Respondent also asserts that he no longer uses fentanyl, was seeking help for his substance abuse issues, and had the income and housing to provide care for KU. However, Troutman recommended that respondent's parental rights be terminated "[d]ue to the nature of the reason why the children came into care." Troutman stated that his recommendation was based on the fact that AU died in respondent's control and custody, as well as respondent's drug use. And although respondent indicated he had a home and income, Troutman testified that the source of income had not been verified as legal nor had there been a home study. Further, respondent himself testified that he had used heroin only a month prior, and although respondent expressed a desire to get help with his substance abuse issues, it did not appear that he had actually taken any steps toward obtaining any such help in the form of substance abuse treatment, counseling, or support groups. Under these circumstances, the trial court did not clearly err by holding that KU's need for safety and substantial risk of harm if returned to respondent outweighed the bond between them. See *In re Jones*, 316 Mich App 110, 120; 894 NW2d 54 (2016) (finding that the trial court had appropriately determined that the bond between the respondent and the children was "outweighed by the children's need for safety, permanency and stability").

Affirmed.


/s/ Mark T. Boonstra
/s/ Kathleen Jansen
/s/ Noah P. Hood

-4-