*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* KDG, Minor.

UNPUBLISHED
February 12, 2025
11:22 AM

No. 371223
Ingham Circuit Court
Family Division
LC No. 21-000920-NA

Before: BOONSTRA, P.J., and M. J. KELLY and MALDONADO, JJ.

PER CURIAM.

Respondent appeals by right the trial court's order terminating her parental rights to her minor child, KDG, under MCL 712A.19b(3)(c)(*i*), (c)(*ii*), (g), and (j). We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

KDG was born in 2021. Later that year, the Department of Health and Human Services (DHHS or petitioner) filed a petition alleging that respondent had abused her older child, MG, and that her partner (with whom respondent lived) had abused and improperly supervised her own child. The petition also alleged that KDG's umbilical cord had tested positive for cocaine at birth, that respondent had tested positive for cocaine when she delivered KDG, and that respondent had failed to participate in random drug screening and in referred services. DHHS requested that KDG and the other children in the household be removed from the care of respondent and her partner. The petition was authorized and the children were removed from the home and placed in nonrelative foster care.

Respondent entered a plea of no contest concerning the allegations in the petition. The trial court held that jurisdiction was established and ordered that respondent not use drugs or alcohol, comply with drug screens, and have Intensive Neglect Services (INS) in place in order to have KDG returned to her care. Respondent received parenting time with KDG.

Although respondent initially had some positive drug screens for marijuana, alcohol, and unprescribed prescription drugs, she gradually improved over the first half of 2022. At a review hearing in July 2022, respondent's caseworker, Ciera Rodriguez, testified that respondent was

"consistent and clean" on her drug screens, that respondent had completed her parenting classes, and that respondent had attended most of KDG's Early On and oral therapy sessions. Rodriguez also testified that respondent had appropriate housing. In August 2022, KDG was placed back with respondent after the trial court found that respondent was making progress in rectifying the barriers to reunification that had existed at the beginning of the case, and that she was compliant with the services provided by petitioner. However, respondent was evicted from her home in December 2022, and in March 2023, respondent again tested positive for prescription drugs not then prescribed to her. At a review hearing in June 2023, the trial court was informed that respondent and KDG had been living in a homeless shelter, but that respondent had left the shelter, leaving KDG to stay at the shelter with respondent's partner. Respondent had no current housing and was spending her nights either at a motel, a friend's home, or on the streets. Respondent had also begun testing positive for cocaine and methamphetamine.

Respondent entered inpatient substance abuse treatment after the June 2023 hearing. At a review hearing in August 2023, it was reported that respondent was in inpatient care for her substance abuse, while KDG remained with respondent's now-ex-partner. Respondent transitioned to a sober living home in September, and KDG lived with respondent in this home. However, respondent was unsuccessfully discharged from the sober living program for testing positive for marijuana, and was transferred to another residential treatment program. In February 2024, respondent was unsuccessfully discharged from that residential treatment program. She left without going to another residential program, instead returning to live with her ex-partner. An emergency removal proceeding was initiated, and KDG was removed from respondent's care. At a permanency planning hearing in March 2024, the court ordered the DHHS to petition for the termination of respondent's parental rights, which it did in April 2024. Respondent's parental rights were terminated as described following a termination hearing in May 2024. This appeal followed.

## II. REASONABLE EFFORTS

Respondent argues that the trial court erred by finding that reasonable efforts were made to reunite her and KDG. Specifically, she alleges that the DHHS did not make such efforts after the February 2024 emergency removal until the termination hearing in May 2024. We disagree.

A respondent preserves a claim that a petitioner failed to make reasonable efforts at reunification by objecting or indicating "that the services provided to them were somehow inadequate" at the time the court adopts the service plan. *In re Atchley*, 341 Mich App 332, 336; 990 NW2d 685 (2022) (quotation marks and citation omitted). However, a petitioner may challenge a service plan later in the proceedings because an adequate service plan may become inadequate over time. *Id*. at 337. Although respondent expressed dissatisfaction with services before the emergency removal, respondent made no such challenge or objection during the time period in which she alleges that the DHHS did not provide services. This issue is therefore unpreserved.

This Court generally reviews for clear error a trial court's findings regarding reasonable reunification efforts. *In re Atchley*, 341 Mich App at 338. "A finding is clearly erroneous if, although there is evidence to support it, this Court is left with a definite and firm conviction that a mistake has been made." *Id*. (quotation marks and citation omitted). However, this Court reviews

unpreserved claims of error for plain error affecting substantial rights. *Id.*; see also *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

Before the DHHS may seek termination of parental rights, it generally "has an affirmative duty to make reasonable efforts to reunify a family." *In re Hicks/Brown*, 500 Mich 79, 85; 893 NW2d 637 (2017). As part of these "reasonable efforts," the DHHS must create "a service plan outlining the steps that both it and the parent will take to rectify the issues that led to court involvement and to achieve reunification." *Id.* at 85-86. A respondent is also required to "participate in the services and demonstrate having benefited from them." *In re MJC*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 365616); slip op at 9.

Respondent argues that DHHS failed to provide adequate services and make reasonable efforts at reunification after KDG's emergency removal in February 2024. The record does not support her argument. Respondent continued to receive services after KDG's emergency removal. The DHHS created and updated a service plan for respondent. Respondent was given referrals and scheduled appointments for outpatient therapy for her substance abuse and mental health issues. She received a referral for drug screening. She participated in parenting classes, and the DHHS provided her with biweekly parenting time. The record shows that respondent stopped participating in these services. Respondent missed 16 drug screens between March 2024 and did not attend any therapy sessions after KDG's emergency removal. Additionally, respondent's caseworker was unable to verify respondent's attendance at parenting classes. Respondent was employed and possessed a vehicle and valid driver's license. Respondent does not explain what additional services the DHHS could have offered that would have altered the results of the termination hearing. The record shows that respondent was continuously provided with services, even after the goal was changed to adoption, yet she failed to avail herself of them. Therefore, the DHHS made reasonable efforts to provide services aimed at reunification, and respondent failed in her responsibility to participate in and benefit from them. *MJC*, ___ Mich App at ___; slip op at 9. The trial court did not err, plainly or otherwise, by finding that DHHS made reasonable efforts to reunify respondent and KDG. *Atchley*, 341 Mich App at 338.

## III. BEST-INTEREST DETERMINATION

Respondent argues that the trial court did not make an adequate finding that termination was in KDG's best interests because it failed to consider the strong bond between respondent and KDG and the possibility of KDG's placement with his grandmother. We disagree.

This Court reviews for clear error a trial court's finding that termination is in a child's best interests. *In re Brown/Kindle/Muhammad Minors*, 305 Mich App 623, 637; 853 NW2d 459 (2014) (quotation marks and citation omitted). A finding is clearly erroneous when, "although there is evidence to support it, this Court is left with a definite and firm conviction that a mistake has been made." *In re Hudson*, 294 Mich App 261, 264; 817 NW2d 115 (2011).

Before a trial court may terminate parental rights, it must find that termination of parental rights is in the child's best interests. MCL 712A.19b(5). The focus is on the child, not the parent, at the best-interests stage. *In re Atchley*, 341 Mich App at 346. The petitioner bears the burden of proving by a preponderance of the evidence that termination is in the child's best interests. *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013).

The trial court should consider several factors when determining whether termination is in the child's best interests. These factors include "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re CJM*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 367565); slip op at 4. Additionally, the court may consider "a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the child's well-being while in care, and the possibility of adoption," as well as the length of the child's time in foster care and the possibility of the child being able to be returned to the parent within the foreseeable future. *Id*.

The record shows that a bond existed between KDG and respondent at the time of termination. At the termination hearing, KDG's foster care worker testified that "their bond is healthy and [KDG] knows that [respondent] loves him." The trial court did not expressly address this bond when it found that termination was in KDG's best interests. However, it did address many other factors. The trial court stated that KDG's need for permanency, stability, and finality was "paramount" for the court, especially because he had been under the court's jurisdiction for nearly three years. The court discussed how respondent had failed to substantially comply with her service plan or to adequately address her substance abuse issues, and had demonstrated a lack of parenting ability. Additionally, the trial court found that KDG was healthy and doing well in the care of his foster parents. The trial court was permitted to determine that other factors outweighed the bond between KDG and respondent. See *In re Jones*, 316 Mich App 110, 120; 894 NW2d 54 (2016).

The trial court is also required to consider a child's placement with relatives, if applicable. *In re CJM*, ___ Mich App at ___; slip op at 4. "A child's placement with relatives weighs against termination." *In re Mota*, 334 Mich App 300, 321; 964 NW2d 881 (2020). The court may appoint a guardian for a child only if it determines that doing so would be in the child's best interests. *In re Simpson*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 368248); slip op at 6. However, if there is not a petition for a guardianship, an argument on appeal that a guardianship should have been established is not persuasive. *Id*.

In this case, KDG was placed with nonrelative foster parents for the duration of the case. Respondent's mother briefly appeared at the termination hearing, stating that she was KDG's grandmother and that she had asked about guardianship before. However, neither respondent nor respondent's mother had ever petitioned the court to establish a guardianship. Nothing in the record suggests that the trial court erred in its consideration of KDG's possible placement with relatives. *Mota*, 334 Mich App at 321.

The trial court did not err by finding that termination was in KDG's best interests. *Brown/Kindle/Muhammad Minors*, 305 Mich App at 637. Accordingly, it did not err by ordering that respondent's parental rights to KDG be terminated.

Affirmed.

/s/ Mark T. Boonstra
/s/ Michael J. Kelly
/s/ Allie Greenleaf Maldonado