*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* T. CADDELL, Minor.

UNPUBLISHED
June 10, 2025
10:33 AM

No. 373139
Jackson Circuit Court
Family Division
LC No. 23-002479-NA

Before: MARIANI, P.J., and MALDONADO and YOUNG, JJ.

PER CURIAM.

Respondent appeals by right the trial court order terminating her parental rights to her minor child, TC. We reverse and remand for further proceedings.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In September 2023, the Department of Health and Human Services (DHHS) filed a petition requesting that the trial court take jurisdiction over TC and remove her from respondent's care.[1] DHHS alleged that respondent lacked suitable housing and was providing improper supervision for TC. DHHS alleged that respondent abused substances, admitted to packaging and selling methamphetamine in the home while TC was present, was involved in several domestic-violence incidents with TC's father while in TC's presence, and had a history with Children's Protective Services (CPS) that resulted in the termination of her parental rights to two other children. The trial court issued an ex parte order immediately removing TC from respondent's custody and placing her into protective custody under the supervision of DHHS. DHHS placed TC in the care of her adult paternal half-sister immediately after removal. TC remained in this relative placement throughout the ensuing proceedings.

The trial court thereafter conducted a preliminary hearing, during which respondent pleaded to the allegations in the petition and to the court's exercise of jurisdiction. Respondent

---

[1] TC's father was also a respondent in this case, but he voluntarily relinquished his parental rights to TC in September 2024 and is not involved in this appeal.

admitted to ongoing domestic violence with TC's father in TC's presence, possessing and using drugs in the home while TC was present, and a prior CPS history, all as detailed in the petition. The trial court accepted respondent's pleas, authorized the petition, instructed that TC remain in her relative placement, granted respondent parenting time supervised by the relative placement, and ordered DHHS to engage in reasonable efforts toward reunification.

DHHS created a case service plan, which the trial court adopted at the initial dispositional hearing in November 2023. At the hearing, the court informed respondent that, in compliance with her case service plan, she must participate in and benefit from domestic-violence, anger-management, mental-health, parenting-education, and substance-abuse services.[2] Respondent was also required to complete a psychological evaluation and follow all recommendations from that evaluation, submit to random drug screenings, and obtain and maintain suitable housing.

Over the months that followed, respondent struggled to demonstrate consistent progress on her case service plan. During the first few months of the case, respondent consistently attended and acted appropriately at parenting time and demonstrated a strong bond with TC during those visits. In February 2024, however, respondent relapsed and, for a period of time thereafter, demonstrated minimal progress in all areas of concern. For instance, respondent inconsistently attended parenting time and refused to complete drug screens, informing her caseworker that she would test positive for substances. Additionally, although respondent agreed to participate in a two-week detoxification program, she left after two days. Respondent also minimally participated in domestic-violence and parenting-education services; was evicted from her home; and was involved in another serious domestic-violence incident with TC's father, which resulted in respondent obtaining a personal protection order against him. In April 2024, respondent was arrested for possession of methamphetamine, and she remained in jail for that offense until early June 2024.

Immediately following her release from jail, however, respondent participated in a two-month inpatient rehabilitation program, which she successfully completed. Respondent thereafter enrolled in a year-long transitional housing program that provided her with substance-abuse and mental-health services, random drug screens, and services to obtain stable housing and employment. TC was not permitted to live with respondent while she participated in the program, but the program permitted parenting-time visits, and it would assist respondent with arranging both onsite and offsite parenting-time visits as well as transportation to and from those visits if needed.

In June 2024, DHHS—at the trial court's direction—filed a supplemental petition requesting termination of respondent's parental rights under MCL 712A.19b(3)(c)(*i*) (conditions that led to adjudication continue to exist) and (*ii*) (failure to rectify other conditions).[3] At the

---

[2] DHHS recommended that respondent complete "a long-term inpatient substance abuse treatment program," but given respondent's successful efforts toward sobriety at the time of the initial dispositional hearing, the trial court informed the parties that respondent needed to complete such an intensive program only if she tested positive for drugs on any drug screens.

[3] Prior to respondent's participation in the inpatient rehabilitation program, respondent had indicated that she was willing to voluntarily release her parental rights to TC. Based on

termination hearing in September 2024, respondent's caseworker testified that respondent's sobriety was the primary barrier to reunification and that all of respondent's other issues were a result of her substance abuse, but respondent did not begin to address her substance-abuse issues until her arrest in April 2024. The caseworker also testified that despite respondent's recent sobriety, which the caseworker acknowledged was significant progress toward reunification, respondent still failed to adequately participate in the other services offered to her throughout the case, so mental health, housing, domestic violence, and parenting skills all remained barriers to reunification. The caseworker emphasized that although respondent was actively participating in a transitional housing program that assisted respondent in all areas of concern, TC could not be returned to respondent's care for at least a year because the program did not permit TC to live with respondent. As a result, and given TC's young age, the caseworker did not believe that reunification was possible within a reasonable amount of time.

At the close of proofs, the trial court found that DHHS had sufficiently established statutory grounds for termination[4] because respondent had not addressed her other barriers to reunification besides substance abuse and, although she had made significant strides toward sobriety, the possibility of reunification was still at least a year away given her commitment to the transitional housing program. The trial court also found that termination was in TC's best interests because TC needed "permanency within a reasonable period of time" and could not "wait a full year in order for that to be demonstrated" by respondent. The court also noted that TC's "current placement . . . has provided care and is able and willing to provide the permanency that [TC] deserves." The trial court thereafter issued an order terminating respondent's parental rights to TC. This appeal followed.

## II. DISCUSSION

On appeal, respondent does not challenge the trial court's findings that the statutory grounds for termination of her parental rights were established by clear and convincing evidence and, instead, only challenges the court's determination that termination was in TC's best interests.

We review for clear error a lower court's decision that termination is in a child's best interests. *In re Olive/Metts Minors*, 297 Mich App 35, 40; 823 NW2d 144 (2012). A finding is clearly erroneous when, even if some evidence supports the finding, the reviewing court is nevertheless left with the firm and definite conviction that the lower court made a mistake. *In re Pederson*, 331 Mich App 445, 472; 951 NW2d 704 (2020). "[W]hether termination of parental

---

respondent's assertions, the trial court changed the permanency goal to adoption and ordered DHHS to file a supplemental petition for termination. Following her successful completion of the rehabilitation program, however, respondent indicated that she no longer wished to relinquish her rights, so the court scheduled a termination hearing.

[4] The trial court did not expressly identify the subdivision of MCL 712A.19b under which it found that statutory grounds for termination had been proven. Given the grounds for termination cited in DHHS's supplemental petition and the language used by the court at the termination hearing, it seems sufficiently clear from the record that the court concluded that at least subdivision (c)(*i*) had been proven by clear and convincing evidence.

rights is in the best interests of the child must be proved by a preponderance of the evidence." *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013). We give deference "to the special ability of the trial court to judge the credibility of witnesses." *Pederson*, 331 Mich App at 472 (quotation marks and citation omitted).

When determining whether termination is in the best interests of the child, the court should place its "focus on the child rather than the parent." *In re Schadler*, 315 Mich App 406, 411; 890 NW2d 676 (2016). "The trial court should weigh all the evidence available to determine the child's best interests," and it should consider a variety of factors, including "the child's bond to the parent; the parent's parenting ability; the child's need for permanency, stability, and finality; and the advantages of a foster home over the parent's home." *In re Simpson*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 368248); slip op at 5 (quotation marks, citations, and alterations omitted). "The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the child[]'s wellbeing while in care, and the possibility of adoption." *In re Rippy*, 330 Mich App 350, 360-361; 948 NW2d 131 (2019) (quotation marks and citations omitted). "The trial court may also consider how long the child was in foster care or placed with relatives, along with the likelihood that the child could be returned to the parents' home within the foreseeable future, if at all." *In re CJM*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 367565); slip op at 4 (quotation marks and citation omitted). "A child's placement with relatives is a factor that the trial court is required to consider when making its best-interests determination, and a child's placement with relatives weighs against termination." *Id*. (quotation marks, citation, and alteration omitted).

Respondent argues that the trial court clearly erred in its best-interests determination because it failed to consider the parent-child bond. Respondent also argues that the trial court failed to consider TC's relative placement and therefore failed to consider whether TC's placement weighed against termination of her parental rights. We agree.

When making its best-interests findings, the trial court exclusively focused on TC's need for permanency, particularly as it related to respondent's substance abuse. Although the court mentioned TC's "current placement" in passing when discussing TC's need for permanency, the court failed to mention, let alone substantively address, the fact that TC's placement was with her paternal half-sister. Because TC was in the care of a relative at the time of termination, the trial court was required to consider TC's placement as weighing against termination when making its best-interests determination. See *id*. at ___; slip op at 4-5. Any discussion of TC's relative placement, however, is entirely absent from the court's findings. As this Court has repeatedly made clear, "a trial court's failure to explicitly address whether termination is appropriate in light of the child's placement with relatives renders the factual record inadequate to make a best-interest determination and requires reversal." *Id*. at ___; slip op at 6 (quotation marks, citation, and alterations omitted).

The trial court's findings were also notably silent on any other best-interests considerations besides TC's need for permanency. A child's need for permanency and a parent's history of

substance use—which the court did consider and address on the record[5]—are certainly among the factors potentially relevant to a best-interests determination, but they are not the only ones. See *Simpson*, ___ Mich App at ___; slip op at 5; see also *Rippy*, 330 Mich App at 361. The parent-child bond, for instance, is widely regarded as an important factor to be considered when determining whether termination is in a child's best interests. See, e.g., *Simpson*, ___ Mich App at ___; slip op at 5. The trial court in the case, however, failed to make any mention of it, despite it featuring in the testimony and arguments at the termination hearing. For instance, respondent's caseworker testified at the hearing that respondent consistently participated in and acted appropriately during parenting time with TC until her relapse in February 2024, and respondent and TC demonstrated a very strong bond during this time. Following her relapse, respondent inconsistently participated in parenting time until April 2024, and she was unable to participate in parenting time at all between April and early June 2024 due to her arrest and subsequent incarceration. Respondent thereafter maintained regular contact with TC to the extent that she was allowed.[6] Indeed, respondent consistently participated in weekly phone calls with TC since early June 2024, and the caseworker acknowledged that respondent had always acted appropriately and in a "caring" manner during these communications.[7]

---

[5] We note that the trial court offered little on the record to support its finding that TC's need for permanency favored termination. In explaining that finding, the court expressed uncertainty about whether respondent may relapse at some point in the next year during her long-term treatment program and noted that TC's current placement was willing and able to provide her with permanency. Respondent's issues with substance abuse were significant and certainly a legitimate consideration in the court's best-interests determination. See *Rippy*, 330 Mich App at 361. The existence of a viable adoption alternative for TC was also certainly relevant. See *id.* But the focus of a best-interests determination must be on the child, not the parent, *Schadler*, 315 Mich App at 411, and the court failed to explain how these considerations led to the conclusion in this case that TC's sense of permanency would be furthered by termination. As noted, TC had been placed with her paternal half-sister since removal in September 2023, with respondent afforded visitation; while it appears that TC's half-sister was willing and able to adopt TC, there is nothing to indicate that the status quo as it stood was unstable or unsatisfactory, or that termination at that time would materially change it on a practical level. There is nothing, for instance, to indicate that respondent's involvement in TC's life would cease after termination; to the contrary, as discussed *infra*, the record suggests it would remain much the same. Correspondingly, while a future relapse by respondent may well impact that involvement and TC, that seemingly would hold true regardless of termination. It is thus unclear from the present record—including the trial court's findings—how, in this case, terminating respondent's rights would meaningfully and positively affect TC's sense of permanency.

[6] The treatment facility did not permit respondent to participate in in-person parenting time with TC, but it allowed her to speak to TC on the phone, which she did on a regular basis.

[7] DHHS filed its supplemental petition for termination shortly after respondent was admitted as a patient in the rehabilitation facility. Although the record makes clear that in-person parenting time would have been available to respondent given the willingness and flexibility of TC's relative placement, the trial court's authorization of the supplemental petition suspended respondent's

Although the caseworker testified that she believed that TC's bond with respondent had diminished slightly since February 2024, there was no evidence suggesting that the bond was irreparably damaged or had ceased to exist. Rather, the caseworker indicated that she believed the diminished bond was largely due to TC's "fear[] that she'd go a length of time without seeing [respondent] again." Furthermore, the record indicates a willingness on the part of both respondent and TC's family members, including TC's relative placement, to foster the bond between respondent and TC. Of course, no one best-interests consideration is necessarily determinative, but given that there was substantial evidence regarding the bond between TC and respondent placed before the trial court, it was a factor that ought to have been considered. See *id.* The court's findings, however, provide no insight into how, if at all, the court factored the parent-child bond into its assessment.

Accordingly, while it might be that termination of respondent's parental rights was ultimately in TC's best interests, the trial court's findings in this case are too deficient to permit proper appellate evaluation of that conclusion. See, e.g., *In re Guardianship of AMMB*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 368915); slip op at 12 (noting that a trial court's factual findings and legal conclusions on the record must be "sufficient to facilitate appellate review"); *In re Beers*, 325 Mich App 653, 677-678; 926 NW2d 832 (2018) (concluding that this Court could not "decide the matters [at issue] on the basis of the existing record" while still duly avoiding the "danger of engaging in improper appellate fact-finding"); see also MCR 3.977(I)(1). Given the court's failure to expressly consider TC's relative placement as weighing against termination, as well as other factors clearly relevant to its best-interests determination, we must vacate the trial court's best-interests determination and remand for the trial court to conduct a new best-interests hearing. See *CJM*, ___ Mich App at ___; slip op at 5-6.[8]

Before proceeding with a new best-interests hearing on remand, however, the trial court must first address certain apparent, and important, procedural deficiencies that have surfaced in this Court's review of the record in this case. First, the trial court must ensure that it complied with the requirements set forth in the Indian Child Welfare Act (ICWA), 25 USC 1901 *et seq.*, and Michigan's Indian Family Preservation Act (MIFPA), MCL 712B.1 *et seq.* At the preliminary hearing, TC's father identified the Blackfoot tribe as a potential source of Indian heritage for TC. Once the court was made aware of TC's possible Indian heritage, it was required to notify, by registered mail, the Blackfoot tribe of these child-protective proceedings and of the tribe's right to intervene. 25 USC 1912(a); MCL 712A.9(1). Although the trial court instructed the DHHS caseworker to further investigate TC's possible tribal affiliation and the caseworker confirmed that

___

parenting time, thereby precluding respondent from engaging in any in-person parenting time following her successful release from the rehabilitation facility.

[8] To further support her argument that the trial court "didn't follow all the appropriate steps" or "give consideration to all the [relevant] factors" when making its best-interests determination, respondent also cursorily argues on appeal that the court did not consider guardianship as a permanency option. We see no merit in this argument because, as respondent concedes—and as the record makes clear—the court did, in fact, consider guardianship as a permanency option at two review hearings prior to the termination hearing. Nonetheless, for the reasons already stated, we agree with respondent that the court's best-interests findings were deficient.

she would "start the paperwork" that day, there is no documentation in the record indicating that written notice, via registered mail, was ever sent to the Blackfoot tribe regarding these proceedings. Such documentation is necessary to ensure that the court complied with the requirements of ICWA and MIFPA, and it is unclear from the existing record that the court did so. See 25 USC 1912(a); MCL 712A.9(1); *In re Morris*, 491 Mich 81, 89; 815 NW2d 62 (2012) (holding that "the trial court must maintain a documentary record" demonstrating that proper statutory notice was given, "including, at minimum, (1) the original or a copy of each actual notice personally served or sent via registered mail . . . and (2) the original or a legible copy of the return receipt or other proof of service showing delivery of the notice"); *In re Jones*, 316 Mich App 110, 116-119; 894 NW2d 54 (2016). Accordingly, the trial court must first ensure compliance with ICWA and MIFPA, including proper documentation of such compliance, before proceeding with a new best-interests hearing on remand.

Second, the trial court must address the apparent absence of orders of adjudication and disposition in this case. The record transcripts suggest that the court adjudicated the case by accepting respondent's pleas at the preliminary hearing and conducted an initial dispositional hearing approximately one month later, but orders of adjudication and disposition are not included in the record, nor are they reflected in the register of actions.[9] Although both orders would mark important determinations in these proceedings, the order of adjudication is of particular significance because adjudication "divests the parent of her constitutional right to parent her child and gives the state that authority instead," and "the procedures used in adjudicative hearings protect the parents from the risk of erroneous deprivation of their parental rights." *In re Ferranti*, 504 Mich 1, 15-16; 934 NW2d 610 (2019) (quotation marks and citation omitted). Absent a proper assumption of jurisdiction during the adjudication phase of the case, the court may not proceed to the case's dispositional phase. See *id*. at 16 (noting that the case proceeds to the dispositional phase only after "the trial court's jurisdiction is established" during the adjudication phase); *In re Sanders*, 495 Mich 394, 406; 852 NW2d 524 (2014) (noting that the trial court has "broad authority" under MCL 712A.6 "in effectuating dispositional orders," but only after "a child is within its jurisdiction"). Given the general proposition that a "court speaks through its written orders and judgments, not through its oral pronouncements," *In re Baham*, 331 Mich App 737, 747 n 6; 954 NW2d 529 (2020) (quotation marks and citation omitted), the apparent absence of these orders from the record is concerning. Before proceeding with a new best-interests hearing

---

[9] An order of adjudication and an order of disposition for TC's father are included in the lower court record, and the orders are properly reflected in the register of actions. As for respondent, however, there is no order of adjudication or order of disposition present or reflected in the record. There is an order after preliminary hearing, which was issued after the preliminary hearing and in which the trial court authorized DHHS's petition, finding that there was probable cause that one or more allegations in the petition were true—but that order made no mention of respondent's plea to the allegations in the petition or plea to jurisdiction, nor did it indicate that the court had adjudicated the case and was assuming jurisdiction over TC. Similarly, there is an order after pretrial hearing, which was issued after the initial dispositional hearing, but it makes no mention of respondent's case service plan or her expected behavior throughout the case to achieve reunification. This order also seems to be missing its final page, including a signature by the court.

on remand, the trial court must ensure it has properly proceeded through the prior stages of this case, including its assumption of jurisdiction over TC, and addressed any errors to that effect.

## III.  CONCLUSION

We vacate the trial court's best-interests determination and remand for further proceedings consistent with this opinion.  We do not retain jurisdiction.

/s/ Philip P. Mariani
/s/ Allie Greenleaf Maldonado
/s/ Adrienne N. Young