*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* R. M. WENDZEL, Minor.

UNPUBLISHED
May 12, 2026
1:32 PM

No. 378344
St. Joseph Circuit Court
Juvenile Division
LC No. 2024-000621-NA

Before: MURRAY, P.J., and REDFORD and RICK, JJ.

PER CURIAM.

Respondent-mother appeals by right the trial court's order terminating her parental rights to her minor child, RW, under MCL 712A.19b(3)(c)(*i*) and (3)(j). Because the record is unclear whether the trial court complied with the notification requirements under the Indian Child Welfare Act (ICWA), 25 USC 1901 *et seq*., and the Michigan Indian Family Preservation Act (MIFPA), MCL 712B.1 *et seq*., we conditionally reverse and remand this matter to the trial court only to resolve the ICWA notice issue.[1]

## I. ICWA/MIFPA

Respondent argues that the trial court failed to determine, on the record, whether notice was sent, or whether RW possessed the necessary heritage to trigger the statutory protections of ICWA and MIFPA, after it was put on notice of RW's potential Indian heritage. We review issues involving the application and interpretation of ICWA and MIFPA de novo. *In re L A Ledee Minor*, ___ Mich App ___, ___; ___ NW3d ___ (2026) (Docket No. 371631); slip op at 4.

In determining whether ICWA or MIFPA applies, the trial court must first determine whether the minor child falls within the definition of "Indian child." *In re Morris*, 491 Mich 81, 99-100; 815 NW2d 62 (2012). ICWA defines an "Indian child" as "any unmarried person who is under the age of eighteen and is either (a) *a member* of an Indian tribe or (b) is *eligible for*

---

[1] Petitioner did not file a brief on appeal.

*membership* in an Indian tribe and is the biological child of a *member* of an Indian tribe."[2] *Id.* at 100 (quotation marks and citation omitted). See also 25 USC 1903(4). Indian tribes determine membership, so "when there are sufficient indications that the child may be an Indian child, the ultimate determination requires that the tribe receive notice of the child custody proceedings, so that the tribe may advise the court of the child's membership status." *Morris*, 491 Mich at 100. See also 25 USC 1912(a). In relevant part, the notice requirements under ICWA provide as follows:

> [W]here the court *knows or has reason to know* that an Indian child is involved, the party seeking the foster care placement of, or termination of parental rights to, an Indian child shall notify the parent or Indian custodian and the Indian child's tribe, by registered mail with return receipt requested, of the pending proceedings and of their right of intervention. If the identity or location of the parent or Indian custodian and the tribe cannot be determined, such notice shall be given to the Secretary in like manner . . . . [25 USC 1912(a) (emphasis added).]

However, the ICWA notice requirements under 25 USC 1912(a) are only "triggered by indicia of Indian heritage sufficient to give the court actual knowledge or a 'reason to know' that the child at issue is an Indian child." *Morris*, 491 Mich at 104. In general, this "reason to know" standard is a "rather low bar" for triggering the notice requirement, *id.* at 105, because "sufficiently reliable information of *virtually any* criteria on which membership might be based is adequate to trigger the notice requirement," *id.* at 108 (emphasis added).

Further, under MIFPA, our Legislature provided "a nonexclusive list of circumstances that trigger the notification mandate . . . ." *In re Jones*, 316 Mich App 110, 114; 894 NW2d 54 (2016). In relevant part this list includes when "[a]n officer of the court involved in the proceeding has knowledge that the child *may be* an Indian child." MCL 712B.9(4)(e) (emphasis added). Further, our Supreme Court has clarified under ICWA that

> indicia sufficient to trigger tribal notice includes situations in which (1) the trial court has information suggesting that the child, a parent of the child, or members of a parent's family are tribal members, [or] (2) the trial court has information indicating that the child has Indian heritage, even though no particular Indian tribe can be identified . . . . [*Morris*, 491 Mich at 108 n 18.]

ICWA notice provisions are triggered even when respondents merely inform the court that they have Indian heritage. See, e.g., *id.* at 109; *In re Johnson*, 305 Mich App 328, 329; 852 NW2d 224 (2014).

At the preliminary hearing, respondent's counsel informed the trial court that respondent said that she had "some" Indian heritage "down the line" and that she thought that RW's father also may have some Indian heritage. The primary issue is whether this brief statement by

---

[2] "The definition of 'Indian child' in MIFPA is similar to that in ICWA, but does not require the child who is eligible for membership to also be the biological child of a member of an Indian tribe." *In re KMN*, 309 Mich App 274, 287; 870 NW2d 75 (2015).

respondent's counsel constitutes sufficient indicia of Indian heritage as to trigger the notification requirements under ICWA and MIFPA. We conclude that it did, as did the trial court.

First, the information came directly from an officer of the court, i.e., respondent's counsel, and ultimately from respondent. Under MCL 712B.9(4)(e), this is sufficient to trigger the notification mandate. See also *Jones*, 316 Mich App at 116-117 (holding that information that the child might have Native American heritage obtained from the respondent was sufficient to trigger the notification requirements). Second, the fact that respondent, or her counsel, did not provide a specific tribe is not determinative because "indicia sufficient to trigger tribal notice" also exists when "no particular Indian tribe can be identified." *Morris*, 491 Mich at 108 n 18. Further, both ICWA and MIFPA specifically provide guidance for notification when a particular Indian tribe cannot be determined, i.e., provide notice to the Secretary of the Interior. See 25 USC 1912(a); MCL 712B.9(1). In other words, there is no requirement that a specific tribe be named in order to trigger the notice requirements of ICWA and MIFPA.

As discussed earlier, the trigger for the notification mandate is a "low bar," Morris, 491 Mich at 105, and we must "err on the side of caution, protecting the interests of Indian children, families, and tribes to avoid later potential disruptions in the child's life," *Jones*, 316 Mich App at 117. Here, there is no indication on the record that the DHHS ever notified potential tribes or the Secretary of the Interior. At most, the court reports indicate that the DHHS made a "Native American Inquiry," with the ultimate determination that there was not any "Native American affiliation." However, there is no indication or explanation in the record as to how the DHHS came to this conclusion, and the trial court never made any specific findings regarding whether notice was sent or whether RW was considered an "Indian child" under ICWA and MIFPA. See *Johnson*, 305 Mich App at 332-333.

We encountered a very similar scenario in *Johnson*, 305 Mich App at 330, and concluded that remand was necessary because the statement at the preliminary examination was sufficient to trigger the notification requirements, and there was insufficient evidence in the record that any proper inquiry was made. Although here it is likely that the DHHS ultimately determined that ICWA or MIFPA were not triggered, as evidenced by the conclusion noted in the initial court report and subsequent reports, this is not certain from the record. Accordingly, we must conditionally reverse the order and remand for resolution of the ICWA notice issue. *Morris*, 491 Mich at 89. On remand, the trial court shall first ensure that notice was properly made to the appropriate entities. *Id*. at 123. If the trial court determines that the child is not an Indian child, then the trial court's order terminating parental rights should be reinstated. *Id*. But, if the trial court determines that the child at issue is an Indian child, then the protections of ICWA apply, and the trial court's order terminating parental rights "must be vacated and all proceedings must begin anew in accord with the procedural and substantive requirements of ICWA." *Id*.

## II. ADMISSION OF TESTIMONY AT ADJUDICATION TRIAL

Respondent's only other argument is that her due-process rights were violated by the admission of a process server's testimony at the adjudication trial.

This argument was not advanced in the trial court; therefore, it is not preserved. See *In re Utrera*, 281 Mich App 1, 8; 761 NW2d 253 (2008). We review unpreserved arguments of

constitutional error for plain error. *In re Ferranti*, 504 Mich 1, 29; 934 NW2d 610 (2019); *In re VanDalen*, 293 Mich App 120, 135; 809 NW2d 412 (2011). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) the error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *VanDalen*, 293 Mich App at 135 (quotation marks and citations omitted). "An error has affected a party's substantial rights when there is a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *In re Pederson*, 331 Mich App 445, 463; 951 NW2d 704 (2020) (quotation marks and citations omitted). The outcome of the proceeding will not be reversed unless the plain error "seriously affect[ed] the integrity, fairness, or public reputation of the judicial proceedings." *In re MOTA*, 334 Mich App 300, 311; 964 NW2d 881 (2020). The interpretation and application of statutes and court rules are reviewed de novo. *In re Sanders*, 495 Mich 394, 404; 852 NW2d 524 (2014).

Child protective proceedings may be initiated by filing a petition that "contain[s] facts that constitute an offense against the child under the juvenile code." *In re Collier*, 314 Mich App 558, 567-568; 887 NW2d 431 (2016) (quotation marks and citations omitted). After the petition is authorized, the proceeding moves onto the adjudicative phase. *MOTA*, 334 Mich App at 312. The adjudicative phase in child protective proceedings "is of critical importance because the procedures used in adjudicative hearings protect the parents from the risk of erroneous deprivation of their parental rights." *Collier*, 314 Mich App at 568 (quotation marks, citation, and alteration omitted). In this phase, the trial court determines whether the child "comes within the jurisdiction of the court." *Pederson*, 331 Mich App at 464 (quotation marks and citation omitted). "The fact-finding adjudication of an authorized petition to determine if the minor comes within the jurisdiction of the court is called a trial." *Id*. (quotation marks and citation omitted). See also MCR 3.903(A)(27).

If the respondent demands a trial, then the respondent "is entitled to a determination of the facts by the jury or judge, the rules of evidence apply, and jurisdiction must be established by a preponderance of the evidence." *MOTA*, 334 Mich App at 312-313. Once the petitioner proves by a preponderance of the evidence one or more of the statutory grounds for jurisdiction alleged in the petition, the case enters the dispositional phase. *Ferranti*, 504 Mich at 16.

At trial petitioner presented John Mazur-Baker, a process server, as a witness. Respondent's counsel challenged whether Mazur-Baker's testimony was relevant and necessary to the proceeding, but the trial court determined that the testimony was relevant. Mazur-Baker testified regarding the following: (1) that he was a process server; (2) that he was tasked with serving respondent; (3) when he went to respondent's residence he saw her "bent over" on a table outside "doing something like sniffing something with her hands"; (4) when he talked to respondent she told him that RW's father was out selling meth and that meth was her "drug of choice that she did when she moved up from cocaine to methamphetamine"; and (5) that he saw a "crystal-like substance around her nostril and she was holding a straw in her hand" which, on the basis of his experience, was consistent with someone using meth.

Respondent advances one clear argument against the admission of this testimony: because the testimony was regarding an event that took place after the petition was filed, her due-process rights were violated. As to this argument, this Court has clearly stated that "[n]either the juvenile code nor the court rules mandates the exclusion of evidence concerning events that occur after a

jurisdictional petition has been filed." *In re Dearmon*, 303 Mich App 684, 696; 847 NW2d 514 (2014). Therefore, "[i]f evidence of postpetition facts qualifies as relevant to an issue presented in an adjudication trial and is otherwise admissible under the rules of evidence, it may be admitted." *Id*. Accordingly, the fact that Mazur-Baker testified regarding an interaction that took place after the petition was filed did not violate respondent's due-process rights.[3]

We conditionally reverse the order terminating respondent's parental rights, and remand for the trial court to make applicable findings under ICWA. We do not retain jurisdiction.

/s/ Christopher M. Murray
/s/ James Robert Redford
/s/ Michelle M. Rick

---

[3] Additionally, the testimony was admissible under the rules of evidence. It was relevant to the issues raised in the petition and was not more prejudicial than probative.